RENO SCAIA'S CASE
(and a companion case [1]).

Franklin.    September 18, 1946. — November 26, 1946.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Workmen's Compensation Act,* Serious and wilful misconduct of employer. *Words,* "Serious and wilful misconduct."

Discussion by QUA, J., of the nature of "serious and wilful misconduct" within G. L. (Ter. Ed.) c. 152, § 28, as appearing in St. 1943, c. 529, § 9.

A finding in a workmen's compensation case that the employer's foreman was guilty of "serious and wilful misconduct" toward an employee within G. L. (Ter. Ed.) c. 152, § 28, as appearing in St. 1943, c. 529, § 9, was not warranted by evidence merely that in the lifting by machinery of an object weighing about four tons the foreman, against the protest of the employee, one of his gang, directed the use of "ordinary" chains whose welding was not as strong as that of "tested" chains also available, and that after the object had been lifted and suspended for about half an hour one of the "ordinary" chains so used gave way at the "grab link" or "ring" and allowed the object to drop, causing injury to the employee.

CERTIFICATIONS to the Superior Court of decisions by the Industrial Accident Board in workmen's compensation cases.

The claimants appealed from decrees entered by order of *Hammond,* J.

*J. N. Alberti,* (*B. Lenhoff* with him,) for the claimants.

*E. H. Potter,* for the insurer.

QUA, J. The question in these cases is whether there was any evidence to warrant the finding of the board that the two employees were entitled to double compensation on the ground that they were injured "by reason of the serious and wilful misconduct" of one Sibley, who could be found to have been "regularly intrusted with and exercising the

─────────────
[1] The companion case is Archie Scaia's Case.

powers of superintendence" in behalf of the employer. G. L. (Ter. Ed.) c. 152, § 28, as appearing in St. 1943, c. 529, § 9. The Superior Court dismissed both claims for double compensation.

Both employees worked for Deerfield Glassine Company in Monroe. On June 27, 1944, both were members of a "repair gang" in charge of Sibley. The work involved the lifting of a "dryer roll," which weighed about four tons, from a paper making machine by means of chains attached at the ends of the roll. After the roll had been lifted and held suspended for about half an hour one of the chains gave way and permitted the roll to fall back upon the machine, causing injuries to the two employees. Two types of chains were available for this work, described respectively as "tested" chains and "ordinary" chains. The chain that broke was an "ordinary" chain, the welding of which gave way at the "grab link" or "ring." The tested chains were machine welded where welding was necessary, and the ordinary chains were hand welded. There was evidence that the machine welding was much stronger than the hand welding, and that the tested chains were to be used for heavy lifting.

There was also evidence from one of the present employee claimants that he told Sibley that one of the chains had a defective "ring" — the "ring" that broke; that the witness suggested using "cable slings," but Sibley replied that they were not long enough and that the chains were good enough; that the witness asked Sibley about using the tested chains, and Sibley replied, "Never mind. You follow me with them chains"; that the witness told Sibley that if the master mechanic saw him using them he (Sibley) would "get it"; and that the witness refused to put one of these chains on the roll but threw it on the floor instead. This highly self-serving evidence was contradicted, and the board dealt with it in a manner suggesting doubt as to its truth, but we assume that it is still in the cases.

The "serious and wilful misconduct" which lays the foundation for double compensation under § 28 of the act "is much more than mere negligence, or even than gross or

culpable negligence. It involves conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences." *Burns's Case*, 218 Mass. 8, 10. *Riley's Case*, 227 Mass. 55, 56–57. *Beckles's Case*, 230 Mass. 272, 273. *Randolph's Case*, 247 Mass. 245, 247. *Durgin's Case*, 251 Mass. 427, 430. *Silver's Case*, 260 Mass. 222, 224. *McCarthy's Case*, 314 Mass. 610, 612. "It resembles closely the wanton or reckless misconduct which will render one liable to a trespasser or a bare licensee." *Nickerson's Case*, 218 Mass. 158, 160. It also resembles closely the wilful, wanton, and reckless or the wanton and reckless conduct which will permit recovery by a person in spite of contributory negligence on his own part, *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, and the wanton and reckless conduct which in case of the death of the person injured will support a conviction for involuntary manslaughter, *Commonwealth* v. *Welansky*, 316 Mass. 383, 397–401, and the "reckless disregard of safety" defined in Am. Law Inst. Restatement: Torts, § 500. Under the last mentioned definition not only must the actor intentionally do the act upon which he is sought to be charged, but also he must know or have reason to know of facts "which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." His conduct "must not only be unreasonable, but it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore negligent. It must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great." Restatement: Torts, § 500, comment a. Our own decisions have recognized that an essential ingredient in wanton and reckless conduct is "a high degree of likelihood that substantial harm will result to another." *Commonwealth* v. *Welansky*, 316 Mass. 383, 399. *LeSaint* v. *Weston*, 301 Mass. 136, 138.

We think that the evidence fell short of enough to warrant

a finding of an easily perceptible danger coupled with the high degree of likelihood that harm would result which is required to carry a case across the line from negligence or gross negligence into the territory of wanton and reckless conduct. If there was a defect in the welding of the "ring," it does not appear that Sibley ever saw it, or that it was readily apparent, or how serious it would appear to be upon examination. Yet all the evidence tended to show that the employees' injuries resulted from the broken weld and not from any other insufficiency in the chains used. Although stronger chain could have been used, there was no evidence of the actual capacity of the chain that was used, or that such chain would commonly be incapable of carrying the strain that was placed upon it, which in fact it did carry while raising the roll and for half an hour afterwards. In short, there was evidence that Sibley could have been more careful and that he took some risk in using the ordinary chain, but we fail to find evidence that the risk he took was both so obvious and so great as to render his conduct "serious and wilful," that is, practically speaking, wanton and reckless, within the established construction of § 28. We do not think that Sibley could have been convicted of manslaughter on this evidence, if one of the injured employees had died. Neither do we think that the situation is altered by the complaint of one of the employees, if he made such complaint. The refusal of an experienced foreman like Sibley to accept the judgment of one of his gang does not appear to have been wanton and reckless. The difference between these cases and one in which, for example, a person dashes in his automobile at high speed through a crowded square seems apparent. The conduct of Sibley was not more reprehensible than that of the employer in *Riley's Case*, 227 Mass. 55, who furnished for use of its employees an elevator "so thoroughly out of repair as to be unsafe" and considered by the superintendent to be in a dangerous condition. See further *Beckles's Case*, 230 Mass. 272; *Randolph's Case*, 247 Mass. 245; *Silver's Case*, 260 Mass. 222; *McCarthy's Case*, 314 Mass. 610.

In each case the rescript will be ·          *Decree affirmed.*