'STANLEY PALTSIOS'S CASE.

Suffolk. October 7, 1949. — February 10, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Serious and wilful misconduct of employer, Labor laws. *Labor and Labor Union. Contract*, Of employment. *Words*, "Employ . . . or permit . . . to work."

A boy, over sixteen but under eighteen years of age, injured by loss of a hand caught in a grinding machine while working in a provision store, was not entitled to double compensation under G. L. (Ter. Ed.) c. 152, § 28, as appearing in St. 1943, c. 529, § 9; c. 149, § 67, as appearing in St. 1939, c. 348, although his employment on the day of his injury "called for" work over a total period of more than ten consecutive hours, where it appeared that at the time of his injury he had worked only about five and one fourth hours: there was no violation of c. 149, § 67. WILKINS & COUNIHAN, JJ., dissenting.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board in a proceeding under the workmen's compensation act.

The case was heard by *Brogna*, J.

The case was argued in October, 1949, before *Qua*, C.J., *Ronan*, *Wilkins*, *Spalding*, & *Counihan*, JJ., and afterwards was submitted on briefs to all the Justices except *Williams*, J.

*C. T. Sexton*, for the employer, submitted a brief.

*J. H. Morris*, for the claimant.

*M. J. Aldrich*, for the insurer, submitted a brief.

QUA, C.J. The principal question in this case is whether

the employee is entitled to double compensation under G. L. (Ter. Ed.) c. 152, § 28, as appearing in St. 1943, c. 529, § 9, for an injury sustained on Saturday, September 22, 1945, when he was over sixteen but under eighteen years of age, by getting his hand caught in a meat grinding machine which he was operating at the provision store of the employer. Loss of the hand resulted.

This section reads as follows: "If the employee is injured by reason of the serious and wilful misconduct of an employer or of any person regularly intrusted with and exercising the powers of superintendence, the amounts of compensation hereinafter provided shall be doubled. In case the employer is insured, he shall repay to the insurer the extra compensation paid to the employee. If a claim is made under this section, and the employer is insured, the employer may appear and defend against such claim only. The employment of any minor, known to be such, in violation of any provision of sections sixty to seventy-four, inclusive, or of section one hundred and four of chapter one hundred and forty-nine shall constitute serious and wilful misconduct under this section."

The board found that the employee, known by his employer to be a minor, was employed in violation of G. L. (Ter. Ed.) c. 149, § 67, as appearing in St. 1939, c. 348,[1] in that he was employed in a "mercantile establishment" (see § 60), and that his employment on the day of his injury "called for" work over a total period of more than ten consecutive hours, even though the injury occurred at about noon after he had worked only about five and one fourth hours. The board held that this "violation" constituted serious and wilful misconduct of the employer under the last

---

[1] This section reads as follows: "Except as limited by section fifty-six, no person shall employ a boy under eighteen or a girl under twenty-one or permit such a boy or girl to work in, about or in connection with any establishment or occupation named in section sixty for more than six days in a week, or more than forty-eight hours in a week, or more than nine hours in a day, and, if the work performed by such a boy or girl in a day is not continuous, but is divided into two or more periods, the person employing such boy or girl shall so arrange his or her work that all such periods shall fall within a period of ten consecutive hours."

sentence of c. 152, § 28, above quoted, and entitled the employee to double compensation. The Superior Court entered a decree in accordance with the decision of the board, and the employer appeals in defence against the claim of double compensation, as under § 28 it may. See *West's Case*, 313 Mass. 146, 154–155.

We are of opinion that there was no violation of c. 149, § 67, "by reason of" which it could be found that the injury occurred. The employee, a high school pupil, worked "on a part-time schedule — afternoons and week-ends." There was evidence of the length of time during which the employee had worked on previous week-ends, including Saturdays, from which an inference could be drawn that the day's work would probably not have been completed on the day of the injury within the required period of ten hours. The injury, however, occurred about noon, and up to that time the permitted day's work had not been exceeded. By the terms of § 67 each day is a unit by itself. The statute forbids work for more than nine hours in one day to be performed within a period of ten consecutive hours. We have been unable to persuade ourselves that where a statute makes it an offence to require or permit work for more than nine hours in any day the offence has been committed when less than six hours have been worked, all within a permitted "period" of ten hours. At the time of the injury no work was being done "in violation" of § 67. It is probable that such work would have been done, if the employee had not been injured, and the day's work had gone on. But we do not see how the injury could be found to have occurred "by reason of" a probably future violation of law, which in fact never took place. Neither do we see how on any evidence in this record it could be found to have occurred "by reason of" violations on previous days. There is nothing to show, for example, that fatigue as the result of previous overwork had anything to do with the injury. See *Baltimore & Ohio Railroad* v. *Wilson*, 242 U. S. 295. Except on the next previous day (Friday), the employee had worked only half days after school hours during the entire week.

If it be argued that a finding was warranted that in view of the hours actually worked on former occasions it had come to be understood that the employment would or might involve work beyond the permitted hours, we think, nevertheless, that the mere hiring or the settling of the terms and conditions of employment cannot constitute in itself "violation" of the prohibitions as to working hours contained in the sections to which § 28 refers. We think those prohibitions relate to employment *at work* and that "violation" consists in actually requiring or permitting work beyond the specified hours. *Purtell* v. *Philadelphia & Reading Coal & Iron Co.* 256 Ill. 110, 117. *State* v. *Deck*, 108 Mo. App. 292, 296. *Buffalo Steel Co.* v. *Aetna Life Ins. Co.* 136 N. Y. Sup. 977, 982. To employ often means to employ at actual work and not merely to hire. *Commonwealth* v. *Griffith*, 204 Mass. 18, 21–22. *Lutkevicz* v. *Brennan*, 128 Conn. 651. *Kravis* v. *Hock*, 137 N. J. L. 252, 255. *People* v. *Taylor*, 124 App. Div. (N. Y.) 434. *American Candy Co.* v. *Aetna Life Ins. Co.* 164 Wis. 266, 270. *Tennessee Coal, Iron & Railroad Co.* v. *Muscoda Local No. 123*, 321 U. S. 590, 598. See *Commonwealth* v. *Riley*, 210 Mass. 387, 391, 395–396. The use in § 67 and in other sections of c. 149 of the words "permit . . . to work" in conjunction with the word "employ" does not mean that two crimes were created, one of which was to consist of the mere making of a contract of employment apart from actual work. In R. L. c. 106, §§ 23 and 24, the words were "shall be employed in laboring." These words had previously been held to mean "engaged in labor." *Commonwealth* v. *Hamilton Manuf. Co.* 120 Mass. 383, 384. In St. 1913, c. 831, the words became "employed or permitted to work." We do not believe that the Legislature intended to make a new crime out of the abstraction of entering into a contract of hire. We believe that both before and after the act of 1913 the Legislature intended to reach the concrete act of requiring or allowing the work — the thing that caused the harm at which the statute was aimed. We think that the words "or permit . . . to work" were designed to prevent

the employer from attempting to defend on the ground that he had not employed or authorized the employment of a minor actually found working in his establishment. See *Purtell* v. *Philadelphia & Reading Coal & Iron Co.* 256 Ill. 110, 116–117. This construction gives ample effect to those words.

Under the compensation law "violation" is the test. That test must be the same in this case as it would be if the employer were being subjected to a criminal prosecution. If an employer should hire a minor to work longer than the permitted hours, but should never in fact allow him so to work, we think there could be no conviction for "violation," and if he were allowed so to work on a single occasion there would be one "violation" and not two. So too, if a minor were hired to do work forbidden to one of his age, but through some delay performed no such work until after his age permitted it, we should not be prepared to hold the employer guilty. In the case before us a simple direction by the employer at any time could have ended all violation from then on. Such a direction might have been given on the afternoon of the injury. In *Commonwealth* v. *Griffith*, 204 Mass. 18, 22, it was held that a defendant could be found guilty under what is now part of c. 149, § 60, if the actual work was performed in this Commonwealth, even though the contract was made in another State. See further *Commonwealth* v. *Hong*, 261 Mass. 226; *Pierce's Case*, 267 Mass. 208.

Of all the prohibitions contained in c. 149, §§ 60 to 74, and in § 104, to all of which reference is made in c. 152, § 28, as appearing in St. 1943, c. 529, § 9, a comparatively small number deal with hours of labor. The greater number deal with specified occupations or machines at which or upon which minors must not be allowed to work. Would an employer who had simply hired an employee in general terms at will be guilty of a "violation" on a particular day because the hiring did not preclude work upon a forbidden machine and because on one or more previous occasions the employee had worked on such a machine, even though on the

day in question he had done only allowable work in a place far removed from any forbidden machine? Could an injury on that day be found to have occurred "by reason of the serious and wilful misconduct of an employer" simply because of what had gone before? We feel compelled to conclude that neither a "violation" which may occur under the conditions of employment but which has not occurred at the time of the injury, nor a violation which has occurred but between which and the injury no causal connection is shown, confers a right to double compensation.

It may be, as the employee argues, that if at the time of the injury the employee is actually being required or permitted to work in violation of one of these prohibitions, that fact alone so characterizes the employment for the time being that if the injury arises out of the employment at all it must, for the purposes of c. 152, § 28, as amended, be deemed to have occurred "by reason of the serious and wilful misconduct of an employer" without further proof that the "violation" caused the injury. See, however, *West's Case*, 313 Mass. 146, 151–152.. But we do not reach that question in this case. In our opinion neither anticipatory violation nor past violation not shown to have been a cause is enough.

We have not been greatly aided by the few decisions closely in point which we have been able to discover in other jurisdictions. These decisions must be read with reference to their own particular statutory backgrounds. Nevertheless the following cases seem to us to support our conclusions in greater or less degree. *Williams* v. *Southern Pacific Co.* 173 Cal. 525, 537–543. *Hogan* v. *Bateman*, 184 Ark. 842, 845–847. *H. P. Welch Co.* v. *State*, 89 N. H. 428, 440. *Cunningham* v. *Warshawsky*, 271 App. Div. (N. Y.) 573. Tending in greater or less degree in the opposite direction are *Maryland Casualty Co.* v. *Industrial Accident Commission*, 179 Cal. 716, 719, *El* v. *Newark Star-Ledger*, 131 N. J. L. 373, and *Kast* v. *Lacona Sand & Gravel Co.* 250 App. Div. (N. Y.) 679. These additional cases may also have some incidental bearing upon the issues involved: *Birmingham*

*News Co.* v. *Andrews,* 204 Ala. 649; *Williamson* v. *Old Dominion Box Co.* 205 N. C. 350, 352; *Sacripante* v. *United Metal Spinning Co. Inc.* 299 N. Y. 419; *Johnson* v. *Endura Manuf. Co.* 282 Pa. 322; *Rossi* v. *Ronci,* 59 R. I. 307, 310–315; *Western Union Telegraph Co.* v. *Ausbrooks,* 148 Tenn. 615, 624; and *St. Louis, Iron Mountain & Southern Railway* v. *McWhirter,* 229 U. S. 265, 280–283.

Since the decree must be reversed, it becomes unnecessary to decide a secondary question as to whether the insurer is chargeable with a sum allowed in the decree to relieve the employee of the reasonable cost of attorney's fees and expenses, where the employer and not the insurer is the real party in interest. G. L. (Ter. Ed.) c. 152, § 28, as appearing in St. 1943, c. 529, § 9. See c. 152, § 11A, inserted by St. 1945, c. 444. See now St. 1949, c. 372.

Certified copies of certain papers from the Industrial Accident Board presented to us at the argument but never presented to the Superior Court have not been considered. G. L. (Ter. Ed.) c. 152, § 11, as most recently amended by St. 1939, c. 213, § 1.

The decree is reversed and a decree is to be entered dismissing the employee's claim for double compensation.

*So ordered.*

WILKINS, J. I cannot agree to the foregoing opinion. The reviewing board found that on the day of the injury the contract for employment "called for the employee to work from 6:45 A.M. to the 6 P.M. closing time, a period of more than ten consecutive hours." This must stand unless, as is not the case, a different finding was required as matter of law. See *McCarthy's Case,* 314 Mass. 610, 612, and cases cited. It is not open to question, therefore, that the contract of employment contained this provision. I accept for present purposes the principle that each day is a separate unit. The finding means that when injured about noon the employee had been put to work and was then working, and on that day, after being put to work, already had worked five and one fourth hours pursuant to a contract which

"called for" a violation of G. L. (Ter. Ed.) c. 149, § 67, as appearing in St. 1939, c. 348. It was not merely a putting to work under a contract which might or might not lead to a future violation. It was a putting to work under a contract containing an unlawful provision, and it was a keeping at work under that contract until injury supervened. I believe that on that day there was a violation of the statute at all hours of the performance of the contract, during the first or sixth hour as well as there surely would have been during the tenth. While a simple direction by the employer on the afternoon of the injury could have ended all violation from then on, it could not have ended retroactively all violation up to then. This is not like the last straw on the camel's back. The possibility of repentance at any time before the beginning of the tenth hour did not render work under the contract lawful until the expiration of the ninth.

In order to avoid this conclusion, it is necessary to read the word "employ" in a narrow sense. This I am unwilling to do in construing a statute for the protection of children, particularly when there seems to be no authority requiring it. The opinion of the majority treats the statute as if it merely forbade keeping the employee at work after he had been on the job nine hours in that day. A similar provision was expressly contained in the statute considered in *H. P. Welch Co.* v. *State*, 89 N. H. 428. Of course, in that event, there could be no violation until the employee had worked the allowable limit of hours. Many cases cited in the majority opinion are not contrary to my position. Some support it. Others are authorities simply to the effect that in an action for an injury sustained after working longer than allowed by statute the violation must be shown to be the proximate cause.

I think that the decree should not be reversed on the ground that there was no violation, and that there should be consideration of the question whether the statute requires the violation to be a proximate cause of the injury.

COUNIHAN, J.   I concur in the dissenting opinion of Justice Wilkins but I go farther than he does.

The real crux of the case seems to me, as apparently it seemed to the majority of the court, to lie in the definition of the word "employ."  If it be found that the claimant, a minor under eighteen, was employed in violation of G. L. (Ter. Ed.) c. 149, § 67, as appearing in St. 1939, c. 348, such employment constitutes serious and wilful misconduct of the employer, which, if resulting in injury to the employee, entitles him to an award of double compensation under G. L. (Ter. Ed.) c. 152, § 28, as appearing in St. 1943, c. 529, § 9, and if he was not so employed, then he was not entitled to such an award.  The opinion of the court concedes past violation and even anticipatory violation but maintains that there was no violation at the time the injury occurred since nine hours had not elapsed.

The pertinent words of § 67 are "no person shall employ . . . or permit. . . . to work. . . ."  This prohibition appears in St. 1874, c. 221 (a statute referring to manufacturing establishments), where the language was "employed in laboring," which was construed in *Commonwealth* v. *Hamilton Manuf. Co.* 120 Mass. 383, 384, to mean "engaged in labor."  In other statutes relating to child labor different language has been used including "employed or permitted to work."  St. 1913, c. 831.  By St. 1939, c. 348, the language of § 67 became "shall employ . . . or permit . . . to work . . . ."  I believe that these variations had a legislative purpose and that, instead of one violation, two violations were contemplated, one the hiring with intent to put to work and the other the actual permitting to work.  I cannot agree that § 67 means "to employ *at* work" when it says "to employ . . . or permit . . . to work."  If the Legislature had so intended it could have said "to employ at work or permit to work."  It seems to me that if any modification is to be put on the word "employ" it should be "employ to work."

I do not believe, as I have already said, that the word "employ" in § 67 or "employment" in § 28 should be given

the narrow and uncommon construction which the opinion gives it. "Employ" or "employment" when used in connection with a person means to hire, to engage for work, not actually to use or to put to work. "There are various senses in which the verb 'employ' and its derivatives are used. But when used in connection with matters of ordinary business, as in this statute, it means, we think, service rendered or to be rendered for compensation, and is nearly or quite synonymous with 'hire,' though, as said by the authors of the Standard Dictionary, a word of more dignity than that." *Bingham* v. *Scott*, 177 Mass. 208, 211. *Mc-Cluskey* v. *Cromwell*, 11 N. Y. 593, 599.

This statute, c. 152, § 28, is not penal but remedial in that it grants compensation in an amount additional to, but not different in character from, the compensation awarded to injured adult workers. It should therefore not be construed as strictly as a criminal or penal statute. The policy of the statutes here involved seems obvious. Section 67, which prevents the employment of children under certain ages under certain conditions, is designed to prohibit such employment by imposing sanctions on employers with the underlying beneficent purpose of securing more healthy citizens when these children become adults. See *Commonwealth* v. *Griffith*, 204 Mass. 18; *Berdos* v. *Tremont & Suffolk Mills*, 209 Mass. 489. But the Legislature did not stop there. It went from the general to the particular, and while incidentally imposing additional sanctions on employers, it provided specifically for additional compensation to minors injured when employed in violation of the statute. An intent to favor one who is unlawfully exploited by reason of violation of § 67 must have been in the minds of the legislators when the last sentence of § 28 of c. 152 was added. These statutes, I believe, as all other child labor statutes, should be construed liberally in favor of the child rather than in favor of the employer who consciously or otherwise is violating the law when he engages the services of such a child. To construe these statutes otherwise would be to thwart the will of the Legislature. If the welfare of the

minor is paramount, then no employer ought to be permitted to enter into any sort of understanding or contract whereby a minor is expected or can be permitted to work more than the restricted number of hours. If my views are correct, no causal connection with an accident which happens while the minor is actually working is required other than an illegal hiring of him which had in contemplation permitting him to work more than the permitted time.

Many cases cited in the opinion are not contrary to my position. Some support it; perhaps as many do not. The case of *El* v. *Newark Star-Ledger*, 131 N. J. L. 373, 382, is quite similar. There a statute provided that no minor under sixteen years of age should be employed, permitted, or suffered to work before seven o'clock in the morning. The employer argued that the child was not working at the time contrary to the statute because, although he began his work between 5 A.M. and 6 A.M. of each day of the week, the accident did not occur until between 7:15 and 7:30 A.M. But the court held, to the contrary, that the provision for double compensation applied, if in the words of the statute "the injured employee at the time of the accident is a minor . . . *employed* in violation of the labor law." The court said, "Obviously, the test is not whether the injured employee suffered an accident while working after the prohibited hours. Rather is the test whether the injured minor employee was employed in violation of the labor law. Here . . . [the employee] was 'employed . . . to work before seven o'clock in the morning.' He was therefore employed in violation of the Labor Law."

In *Kast* v. *Lacona Sand & Gravel Co.* 250 App. Div. (N. Y.) 679, where a boy under eighteen was employed over nine hours a day in violation of a statute similar to ours and recovery was allowed, the hour when the accident happened was not considered or discussed.

I am completely supported, it seems to me, by a California case which construed the word "employed" as I do. The violation there was of a criminal statute which read, "No minor of the age of fifteen years shall be employed, per-

mitted or suffered to work . . . during the hours the public schools are in session . . . ." The accident happened at 4:30 P.M. after the school sessions had closed for that day. It was contended that, because the accident happened at a time when the schools were not actually in session, the employment was not in violation of the statute. The court said, however, "But the contract of employment was an entirety and required the decedent to work six days in a week during the whole day and while school was in session. The contract was, therefore, one prohibited by the law, and the fact that the decedent might have been legally employed after school hours on the day in question does not alter the fact that the contract of employment in question was illegal and in violation of the plain terms of the law." *Maryland Casualty Co.* v. *Industrial Accident Commission*, 179 Cal. 716, 719. See *Casperon* v. *Michaels*, 142 Ky. 314.

I believe that the decree should be affirmed.