ROBERT LEBLANC's (dependent's) CASE.

Suffolk. November 1, 1954. — March 4, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Workmen's Compensation Act*, Injuries to which act applies. *Proximate Cause. Evidence*, Presumptions and burden of proof.

In a workmen's compensation case involving a department store stock boy found crushed to death between the platform of a freight elevator and one of the floors in the store, evidence showing that the boy was forbidden to operate the elevator and that he had no occasion to be on it in the course of his work precluded operation of the presumption furnished by G. L. (Ter. Ed.) c. 152, § 7A, inserted by St. 1947, c. 380, and, since the evidence otherwise did not show how he came to be on the elevator or how his death occurred, a finding that his death resulted from an injury arising out of and in the course of his employment was not warranted.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Morton, J.*

*Daniel A. Canning*, for the insurer.

*William J. Fitzgerald*, for the claimant.

RONAN, J. This is an appeal from a decree awarding compensation to the dependent mother of Robert LeBlanc

who was crushed to death between the platform of an elevator and one of the floors of a large department store where he had been employed as a stock boy.

The store occupied a corner building and also an adjoining building known as the Jefferson Building which was separated from the corner building by an alleyway, known as Norfolk Place. The main store was located in the corner building. Both buildings were connected by bridges over Norfolk Place. A freight elevator known as elevator numbered 3 was located in the Jefferson Building. It was used to take food stuffs to the employees' cafeteria which was located on the sixth floor of this building and to remove the garbage from the cafeteria, but its principal duty was to receive the incoming merchandise at its Norfolk Place entrance and bring it up to the marking room on the third floor where the goods were sorted and price tags attached and the goods then placed in that part of the third floor known as the stock room. This elevator had a regular operator but it was usually operated only about four or five hours a day during the period when the bulk of incoming freight was received, which was usually within the first few hours in the morning. The elevator with the lock engaged was left at the Norfolk Place entrance for the receipt of any further goods that might arrive. The lock consisted of a clamp which prevented the movement of the shipper cable sufficiently to start the elevator. The lock could be released by pushing in the clamp by one in the elevator.

The duties of stock boys were to keep replenished the merchandise in the departments to which they were assigned in accordance with the instructions given to them by the heads of the respective departments. LeBlanc was assigned to the women's and children's shoe departments which were located in the corner building and below the level of the stock room. The proper and convenient way for LeBlanc to take shoes for the children's department from the stock room was to go to the rear of the stock room, cross over the bridge spanning Norfolk Place, and take elevator numbered 5 in the main building, and, if going to the women's depart-

ment, to go to the front of the stock room, cross over the
bridge nearest the front of the main building, and then
descend by elevator numbered 15. Both of these elevators
had operators and were available for the use of the stock
boys.

At the time he was hired and on two subsequent occasions
— once when he was operating a freight elevator under the
immediate supervision of a licensed operator and once when
he was preparing to use elevator numbered 3 for the transfer
of merchandise to one of the departments in the store —
he was warned that he was not permitted to operate the
elevator.

About 1:30 o'clock on the afternoon of March 27, 1951,
his dead body was observed on elevator numbered 3, crushed
between the platform of the elevator and the third floor.
The upper part of the body was on the floor of the elevator
and his legs hung in the well. His body was a short distance
from the elevator lock. So far as the record goes the accident
was unwitnessed and unexplained. We do not know who
started the elevator. If it had an operator on it as it ap-
proached the third floor there was no evidence that it was
anyone other than LeBlanc. We do not know whether he
was attempting to get off or to get on the elevator at the
time he was fatally injured. We do not know in which
direction the elevator was moving. There was no merchan-
dise near the place of the accident that LeBlanc might be
conveying to the shoe departments, nor were there any
empty receptacles that he might be returning to the stock
room. The record sheds no light as to the purpose he was
intending to accomplish by being on the elevator. We can-
not accept the inference of the single member adopted by the
board that LeBlanc might have been caught by the elevator
as he was looking down or up into the elevator shaft try-
ing to locate the elevator for that rests on conjecture and
surmise. The insurer contends that the death of the em-
ployee did not arise out of and in the course of his employ-
ment. The burden is, of course, upon a claimant to prove
both elements before she is entitled to receive compensation.

*Barrette's Case*, 312 Mass. 697. *Flaherty's Case*, 316 Mass.
719. The Legislature, however, has furnished a statutory
presumption in aid of a claimant by G. L. (Ter. Ed.) c. 152,
§ 7A, inserted by St. 1947, c. 380, which in so far as material
provides that where the employee is killed or unable to
testify "it shall be presumed, in the absence of substantial
evidence to the contrary, that the claim comes within the
provisions of this chapter . . . ." That section has been
frequently construed by this court. *Goddu's Case*, 323 Mass.
397. *Woloshchuck's Case*, 325 Mass. 10. *Lapinsky's Case*,
325 Mass. 13. *Stepner's Case*, 328 Mass. 230. *Lysaght's
Case*, 328 Mass. 281; S. C. 331 Mass. 451. *Ramos's Case*,
330 Mass. 686. The statute does not mean that the death
of an employee which occurs at the place of his employment
and during his working hours, and which there is substantial
evidence tending to show is disconnected from and unrelated
to his employment, is compensable. Where, as here, such
evidence exists, the statutory presumption disappears and
the decision is to be based upon the entire evidence. *Lapin-
sky's Case*, 325 Mass. 13, 16. *Lysaght's Case*, 328 Mass.
281, 284–285.

The difficulty with the claimant's case is that the em-
ployee at the time of his death was in a place where all the
evidence shows he had no right to be. He was forbidden to
operate a freight elevator. The particular elevator upon
which he was at the time he was killed was in the Jefferson
Building, and it did not lead to the women's or children's
shoe departments in connection with which the decedent
was employed. It was not impossible to use elevator num-
bered 3 and cross the open Norfolk Place and go into the
corner building where these departments were located, but
there was no evidence that any such indirect route had
ever been followed by any stock boy especially where the
employer had furnished ample and direct means of access
from the stock room to freight elevators, equipped with
regular operators, which were located in the corner building
and which went directly to the departments with which the

decedent was connected. In the next place, in view of the evidence, there is no basis for the operation of the statutory presumption that his presence on the elevator was connected either directly or indirectly with his employment. We are of opinion that said § 7A does not apply as there was substantial evidence tending to show that his death was not caused by the performance of any duties he was hired to do or anything incidental thereto. *Stepner's Case*, 328 Mass. 230. *Lysaght's Case*, 328 Mass. 281; *S. C.* 331 Mass. 451.

The final decree is reversed and a decree is to be entered dismissing the claim.

*So ordered.*