WILLIAM MORRIS's (dependent's) CASE.

Suffolk. April 2, 1968. — June 5, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Amount of compensation, Specific compensation. *Evidence,* Of plea of guilty to criminal charge, Relevancy and materiality, Of intent.

Evidence in a workmen's compensation case warranted a finding that an injury to and death of the employee from a fall into the well of a manually operated freight elevator as the employee was preparing to depart from work in a building principally occupied by his employer arose out of and in the course of his employment. [424]

At a hearing by the reviewing board in a workmen's compensation case of a claim under G. L. c. 152, § 28, for double compensation for an injury to and death of the employee, a minor, in a fall into a freight elevator well in a building principally occupied by a corporation which had hired him, evidence of conviction of an officer of the corporation, on a plea of guilty, of employing that minor in violation of c. 149, § 60, was admissible to show serious and wilful misconduct of the employer under c. 152, § 28, and evidence of conviction of the same officer of employing that minor's younger brother in violation of c. 149, § 60, was admissible on the question of whether the officer intended to hire minors. [425]

Evidence in a workmen's compensation case warranted a finding by the reviewing board that the employee, who had been a part time employee of a corporation and paid by it out of pocket and who on a day when he was injured and died had been hired by it at an hourly rate and had been issued and had punched his first time card, became a full time employee of the corporation on that day at such rate, and the board properly based his average weekly wage on such rate for the purpose of an award of compensation under G. L. c. 152, § 31, rather than on the statutory minimum weekly rate. [425–426]

At a hearing by the reviewing board in a workmen's compensation case in which an issue was whether the employee injured was a part time or a full time employee, evidence relative to different methods of employers in paying part time employees and full time employees was not inadmissible because it concerned the employment of persons other than the employee injured, and was adequate to show business practice or custom. [426]

In a workmen's compensation case arising out of an injury to and death of the employee from a fall into an elevator well, a denial by the reviewing board of specific compensation under G. L. c. 152, §§ 36 and 36A, was warranted where it appeared that none of the medical experts who testified had seen or treated the employee at any time, that all of their opinions were based on an autopsy report, and that the report did not contain findings sufficient for opinions free from conjecture and speculation. [426]

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Kalus*, J.

*Timothy H. Donohue* (*Thomas F. Watkins* with him) for the insurer; *David L. Cronin*, for the employer, also with him.

*Thomas F. Quinn* for the claimant.

REARDON, J. These are appeals by the insurer Michigan Mutual Insurance Company (insurer), and the dependent of a deceased employee from a final decree of the Superior Court in accordance with the decision of the reviewing board. The board ordered the payment of benefits under G. L. c. 152, §§ 28, 31, and 33.

The claimant, the father of the fifteen year old employee, alleges that the employee died as a result of injuries arising out of and in the course of his employment and that had he lived he would have suffered a total loss of hearing, total loss of vision in both eyes, loss of function in right leg, loss of function in the chest, and disfigurement. The claimant

also alleges that his son's injury and death occurred while
he was being employed in violation of G. L. c. 149, § 60,
and that all compensation should be doubled as provided in
G. L. c. 152, § 28. The insurer denies that the injury arose
out of and in the course of employment, and contends that
it was a result of serious and wilful misconduct of the em-
ployee, that any compensation awarded under G. L. c. 152,
§ 31, should be reduced to the then statutory minimum of
$8 a week, that there are no benefits payable for certain
specific injuries under G. L. c. 152, §§ 36 and 36A, and that
if the claimant is entitled to double compensation under § 28
the provisions of that section do not apply to benefits payable
under §§ 36 or 36A. It was stipulated by the insurer that
the mother and father were conclusively presumed to be
dependents under G. L. c. 152, §§ 31 and 32. Upon review,
counsel for the insurer renewed objections to the admission
of certain evidence which will be discussed later.

The facts as found by the reviewing board are in summary
as follows. The employer, which was engaged in packaging
various foods, occupied all the floors in a five story building
save the fourth. Supplies were brought from the first floor
to the third floor where the work was performed. The fifth
floor was a storeroom for containers used in the packing. At
one end of the building there was a stairway and at the op-
posite end a "shipper-cord operated freight elevator, manu-
ally operated," with no doors on the elevator or entrances
thereto and with only a "2 x 4" blocking the shaft. The
employee, a boy between fifteen and sixteen years of age,
had worked on occasion for the employer, having been paid
out of pocket by corporation officers. On the day of his ac-
cident he was hired by the treasurer of the corporation at the
rate of $1.25 an hour. He reported at approximately
9:30 A.M., punched a time card, and then was brought to the
third floor by the treasurer who told him "he would operate
a machine which stapled cardboard boxes." Another em-
ployee instructed him in the operation of the machine. He
worked at this task until 12:09 P.M., reported back to work
after lunch, and continued his work until about 4:45 P.M.

when he was instructed by a superior to assist a fellow employee in washing the floor. After doing this work he proceeded to the stairs to go down and visit his brother Daniel who was working in the basement. He talked with Daniel until "a little after 5:30 p.m." and was advised by Daniel that he would be working later than the deceased employee. William told him he would wait for him so that they might return home together. Some fifteen minutes later, at a time when the elevator was at the fifth floor of the building, a thump was heard in the elevator well and a fellow employee went to the shaft and saw a body at the bottom. The police were called and they removed William Morris, who was still alive, from the base of the shaft, and took him to the Massachusetts General Hospital where he was pronounced dead on arrival. An autopsy disclosed multiple traumatic injuries, including a crushed chest and a skull fracture. The reviewing board found "that the employee was employed by the corporation on the date of death; that he had not yet punched out for the evening, and [by inference] that after leaving his brother and telling him he would wait for him . . . he decided to use the elevator to go up to one of the two upper floors to wait for his brother, and in some manner was unaware that the elevator was not there at the time he stepped into the elevator well." The board further found that "in these circumstances the employee's injury arose out of and in the course of his employment," that the employer knew the deceased was a minor, that his employment was in violation of G. L. c. 149, § 61, and that the claimant is entitled under c. 152, §§ 28 and 31, to double compensation.

On the issue of specific compensation, the reviewing board adopted the opinions of medical experts who severally testified that (1) there was nothing in the autopsy report to lead to the conclusion that the optic nerve structure was involved; (2) it did not contain enough detail to warrant medical opinion on the loss of function of the employee's right leg; (3) it did not set forth sufficient to substantiate an award for loss of function of the chest; and (4) the claimant on the basis

of the testimony of the medical expert relative to loss of hearing had not sustained the burden of proof that had the employee lived he would have suffered such a loss in either or both ears. In a further finding the board concluded that the boy was hired to work full time at $1.25 an hour and the claimant was entitled to the maximum weekly compensation.

We deal with the various points at issue in the order which they have been raised by the parties.

1. It is our opinion that the injury and death of this boy did arise out of and in the course of the employment. The record demonstrates that he had worked on prior occasions for this employer, that he was hired on the day of his injury by the corporation treasurer at $1.25 an hour, that he had punched a time card upon arriving at work in the morning, had not punched out for the evening, and was preparing to depart from work when his injury occurred. The decision of the reviewing board is final if supported by evidence and not tainted by error of law. *Webb's Case*, 318 Mass. 357, 358. *Ritchie's Case*, 351 Mass. 495, 496. There is ample evidence in the findings and in the transcript of the hearing which is before us to support the findings by the board of the employment of the decedent and that his injury did arise out of and in the course of his employment. We see no error in the determination of the board on these questions of fact. *Brewer's Case*, 335 Mass. 128, 129, and cases cited. It has long been settled that an employee need not have been engaged in the actual performance of his duties at the moment of injury in order to recover compensation. *Bator's Case*, 338 Mass. 104, 106. *Mercier's Case*, 350 Mass. 299, 300–301. Even if his use of the elevator amounted to serious and wilful misconduct, as the insurer contends, recovery by his dependents would not be barred. G. L. c. 152, § 27. The inference drawn by the reviewing board that the decedent had decided to employ the elevator is not unreasonable in view of ample evidence in the transcript that William and other employees frequently used the elevator for travel from one floor to another. The inference

that he was using it to aid his departure from work, is also reasonable. Cf. *LeBlanc's Case*, 332 Mass. 334.

2. The insurer complains of the action of the reviewing board in sustaining rulings of the single member which admitted evidence tending to show that a corporation officer (1) had been convicted of a violation of G. L. c. 149, § 60, in employing William Morris; and (2) had also been convicted under said § 60 of employing the decedent's brother, Daniel Morris. The admission of certain other evidence relative to the employment of Daniel is also objected to. In so far as the evidence bearing on William is concerned, a plea of guilty to a criminal charge is admissible as an admission in a later civil action "in so far as it amounts to an admission of facts material in the trial of a civil case." *Morrissey* v. *Powell*, 304 Mass. 268, 269. In this instance an officer of the corporation which hired William did plead guilty to the charge. The conviction for a violation under G. L. c. 149, § 60, was evidence to prove an essential element of the claimant's case under G. L. c. 152, § 28.[1] Evidence was properly admitted relative to the employment of Daniel, the younger brother of William, who had been more or less continuously employed on a part time basis by the employer for some two years (that is, since he was twelve). To indicate that the defendant knew William was a minor evidence pertinent to the determination of whether the defendant intended to hire minors was admissible. Evidence of similar acts is admissible on the question of intent, and evidence may be received limited to that question. *Commonwealth* v. *Zaidon*, 253 Mass. 600, 602, 603. *Commonwealth* v. *D'Amico*, 254 Mass. 512, 515. *Commonwealth* v. *McHugh*, 316 Mass. 15, 22, 23. *Commonwealth* v. *Butynski*, 339 Mass. 151, 152. *Commonwealth* v. *Abbott Engr. Inc.* 351 Mass. 568, 572.

3. The insurer contends that there was no evidence upon which the reviewing board could base a finding as to the de-

---

[1] The single member apparently found that the employer had violated G. L. c. 149, § 60, while the reviewing board found a violation of § 61. It was open both to the single member and the reviewing board to find violations of either or both sections.

cedent's average weekly wage and, therefore, any compensation awarded under G. L. c. 152, § 31, should be at the statutory minimum rate of $8 a week existing at the time of the accident. We do not agree. The reviewing board could have found that William Morris was to be a full time employee paid at the rate of $1.25 an hour. He was issued a time card for the first time on July 24, 1961, the date of his death. Prior to that day he had been a part time employee paid out of pocket by a corporation officer. Daniel testified that his brother had started working on a full day basis. There was sufficient evidence in the face of very dubious testimony from the corporation officers, and in conflict with it, to permit the reviewing board to find that the corporation paid part time employees out of pocket and full time employees on time cards, and that William had become a full time employee. This view was supported by the fact that on July 24, 1961, schools were in recess, permitting a full day's work. Evidence given by a State inspector relative to different methods of paying part time and full time employees was objected to on the grounds that it was irrelevant, immaterial and prejudicial for it concerned the employment of a person other than William. There was no objection on the ground that it was hearsay, and in our view the testimony was adequate to show business practice or custom. *Guaranty Security Corp.* v. *Eastern S.S. Co.* 241 Mass. 120, 122, 123. *Barbrick* v. *Huddell*, 245 Mass. 428, 438. *Bianconi* v. *Crowley*, 256 Mass. 187, 189.

4. The denial by the reviewing board of specific compensation under §§ 36 and 36A was warranted. Without describing the reasons in detail, it is sufficient to state that none of the doctors who testified, as the insurer points out, had seen or treated William at any time. All of their opinions were based on the autopsy report, and this report contained findings not sufficient for an opinion which was free from conjecture and speculation. The foregoing summarizes a more careful statement of the reviewing board with which we cannot disagree.

5. In view of the foregoing discussion which sufficiently

indicates our view that this injury and death to a minor, known to be such by his employer who employed him full time, arose out of and in the course of his employment, the decree is affirmed. Costs and expenses of this appeal not otherwise allowed shall under G. L. c. 152, § 11A, be allowed by the single justice.

*So ordered.*