DOUGLAS B. BOARDMAN'S CASE.

Suffolk.    March 5, 1974. — April 25, 1974.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Workmen's Compensation Act,* Double compensation, Serious and
   wilful misconduct of employer, Minor, Medical benefits.  *Minor.
   Words,* "Serious and wilful misconduct." "Operation."

A finding in a workmen's compensation case that a failure of the acting manager of a farm to instruct an employee in the operation of a complicated, recently purchased tractor beyond telling him how to start it did not constitute "serious and wilful misconduct" within G. L. c. 152, § 28, was not lacking in evidential support or tainted by error of law. [189]

There was an actual causal connection between a violation of G. L. c. 149, § 62 (10), by a corporate executive not engaged principally in farming, in that he permitted an employee seventeen years of age whom he knew to be a minor to operate a tractor on the executive's farm, and an injury sustained by the employee after he had left the tractor with its motor running and while he was unloading bales of hay from its front-end loader when the tractor rolled forward and over his leg as he strove to control it, and the employee was entitled to double compensation under c. 152, § 28, for the "serious and wilful misconduct" of his employer. [189-192]

Under the provision of G. L. c. 152, § 28, for the doubling of "the amounts of compensation hereinafter provided," medical expenses furnished by an insurer to an injured employee pursuant to § 30 must be doubled. [192-194]

Under G. L. c. 152, § § 28, 30, the cost of special shoes to an injured employee was a medical expense, double the amount of which the insurer must reimburse the employee as he purchases the shoes from time to time. [194]

In G. L. c. 152, § 35A (d), the words "[a] parent," who is "conclusively presumed" to be wholly dependent for support "upon an unmarried child under the age of eighteen," mean one parent of the child, not both parents. [194]

Under G. L. c. 152, § 28, providing for double compensation to an injured employee, additional compensation payable pursuant to § 35A (d), by reason of a dependent parent must be doubled. [194]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Hallisey*, J.

*Timothy H. Donahue* (*Robert L. Bouley* with him) for the employer.

*Joseph F. Ryan* for the employee.

KAPLAN, J.    These are cross-appeals by the employer and the employee from a decree of the Superior Court reversing a decision of the reviewing board of the Industrial Accident Board and holding that the amounts allowed the employee for expenses of medical services (G. L. c. 152,

§ 30), total disability (§ 34), partial disability (§ 35), dependency (§ 35A), and specific injuries (§ 36 [n], [q]), shall be doubled pursuant to G. L. c. 152, § 28. The employer [1] contends that no double compensation is payable, and in all events objects to double compensation in regard to medical expenses; the employer also objects that dependency allowance was made to both the employee's parents instead of one. The employee claims that it was error to disallow the doubling of the cost of special shoes as part of the medical expenses.

In setting out the facts we follow closely the careful, detailed report of the single member of the Industrial Accident Board, whose findings and decision were adopted by the reviewing board.

The accident occurred on June 19, 1964, at Endean Farm in Walpole. This was a working farm of 320 acres, with the usual farm buildings and equipment, selling dairy and poultry products. It was owned by an individual who was not engaged principally in farming but as a corporate executive.

At the time of the accident, the employee was seventeen years old. He lived with his parents in a residence that was part of the farm property, and he was well acquainted with the farm manager and his two sons, one of whom was acting manager at the time of the accident. He had been taken on as a general farmhand at Endean Farm during his vacation from school in the summer of 1962, and was again employed in the summers of 1963 and 1964. Among the duties he performed was operating tractors.

One of the tractors in use in June, 1964, was a model 2405, International Industrial Tractor, purchased in December, 1963, and larger and more elaborate than those previously used on the farm. It had more complicated controls and was equipped with a front-end loader or shovel operated hydraulically from the driver's seat.

On his fifth day of work that summer, the employee was

---

[1] The extra compensation is payable in the first instance by the insurer but the insurer recoups from the employer. The insured employer may appear and defend against that extra claim only. See c. 152, § 28, second and third sentences.

told to move a load of about 150 bales of hay from the main
cow barn to the calf barn 100 yards away. The hay was
loaded on a trailer attached to the model 2405 tractor, with
three or four bales loaded on the front-end loader, set with
its base parallel to and four feet off the ground.

After taking his seat on the tractor, the employee found
that he did not know how to start it, as the control panel was
different from those he was used to. As he prepared to
dismount, the acting manager of the farm approached and
showed him how to start, but gave him no further instruc-
tions. The employee put the tractor in gear and drove
slowly to the calf barn where he stopped and turned off the
motor. The unloading of the hay onto an elevator took
about twenty minutes. After some difficulty, the employee
restarted the tractor to return to the cow barn and pick up
another load of hay. He put the tractor in gear and began to
make a U-turn when he noticed the bales still on the front-
end loader. He returned to the calf barn and halted the
tractor by applying the foot brake, but he could not find a
floor-board catch to hold the brake, as on other tractors
that he had operated. Accordingly he took the tractor out of
gear, shifted to neutral, removed his foot from the brake,
and sat on the tractor for thirty seconds. The tractor did not
move.

Leaving the tractor in neutral with its motor running, the
employee dismounted and began unloading the bales from
the front-end loader. One of the bales was evidently stuck
and he had to "pull real hard" to dislodge it. This caused
the tractor with trailer attached to roll forward toward him.
He attempted to jump out of the way and to reach the
driver's seat and stop the forward movement. His right
hand landed on a tire which caused him to be pulled down
under the tractor and resulted in the left rear tire running
over his right leg. He was able to roll out of the path of the
tractor and call for help and was promptly removed to the
Norwood Hospital. His injuries need not be here described,
except to say that these resulted in a shortening of his right
leg by one and one-half inches.

It is not disputed that here was "a personal injury arising

out of and in the course of . . . [the employee's] employment" (c. 152, § 26), and that he was entitled to the usual workmen's compensation. Section 28, however, provides in addition that "[i]f the employee is injured by reason of the serious and wilful misconduct of an employer or of any person regularly intrusted with and exercising the powers of superintendence, the amounts of compensation hereinafter provided shall be doubled." Further, "The employment of any minor, known to be such, in violation of any provision of . . . [G. L. c. 149, 'Labor and Industries,' §§ 60-74, 104] shall constitute serious and wilful misconduct under this section."

The employee seeks first to support the award of double compensation by pointing to the failure of the acting manager or anyone under his direction to instruct the employee in the operation of the tractor, especially after it became apparent that the employee was out of his depth in starting it. But the single member found on the evidence, and the reviewing board agreed, that the manager's behavior, although it "might well be construed to constitute negligent conduct imputable to this employer," did not rank as "serious and wilful misconduct" under the statute with its connotation of knowing or reckless wrongdoing, see *Burns's Case*, 218 Mass. 8, 10 (1914); *Scaia's Case*, 320 Mass. 432, 433-434 (1946); and the Superior Court could not justifiably say, nor can this court, that this finding was "lacking in evidential support or tainted by some error of law." *Thayer's Case*, 345 Mass. 36, 39 (1962). *Morris's Case*, 354 Mass. 420, 424 (1968).

The employee, however, was a minor, and known to be such, and his employment was in violation of G. L. c. 149, § 62 (10). This provided that "[n]o person shall employ a minor under eighteen or permit him to work: . . . (10) in operating motor vehicles of any description," but with an exception for the employment of a minor, holding a license to operate motor vehicles (as did the present employee), "in the operation on a farm . . . of any truck, tractor, trailer or self-propelled agricultural instrument registered by a farmer under . . . [G. L. c. 90, § 5]." The exception did not apply

because "farmer" was then defined for the purpose of c. 90, § 5, as "any person . . . engaged principally in the occupation of farming . . ." (see c. 90, § 1, definition of "farmer" prior to amendments of 1965, 1966, and 1969).[2] The single member and the reviewing board thus found that the employer was "in violation" under c. 152, § 28; we may assume the judge below agreed, and so do we.

The employee argues that once the violation is shown, double compensation follows whether or not a connection is established between the violation and the injury (but provided the injury was one "arising out of and in the course of" the employment). "It may be," said the court in *Paltsios's Case*, 325 Mass. 356, 361 (1950), "as the employee argues, that if at the time of the injury the employee is actually being required or permitted to work in violation of one of these prohibitions, that fact alone so characterizes the employment for the time being that if the injury arises out of the employment at all it must, for the purposes of c. 152, § 28, as amended, be deemed to have occurred 'by reason of the serious and wilful misconduct of an employer' without further proof that the 'violation' caused the injury. See, however, *West's Case*, 313 Mass. 146, 151-152 [1943]. We do not reach that question in this case."[3] Subsequent decisions — *Juozapaitis's Case*, 335 Mass. 137, 140 (1956), *S. C.* 340 Mass. 188 (1959), *Garnhum's Case,* 348 Mass. 87, 88 (1964), *S. C.* 349 Mass. 473 (1965), and *Morris's Case*, 354 Mass. 420, 422 (1968) — can be read as

---

[2] After these amendments (St, 1965, c. 643; St. 1966, c. 23; St 1969, c. 122), G. L. c. 90, § 1, now defines "farmer" as "any person . . . engaged principally or substantially in the occupation of farming or of raising horses, poultry or hogs on land owned or controlled by him."

[3] In *Paltsios's Case* the employment of the minor on the day of the injury called for work over a total of more than ten consecutive hours, which was on its face a violation of the pertinent statute, but a majority of the court held that there was no violation unless the injury occurred after the tenth hour; in fact the injury occurred in the sixth. Wilkins, J., dissented from this conclusion (which was not favored elsewhere, see *Maryland Cas. Co.* v. *Industrial Acc. Commn. of Cal.* 179 Cal. 716, 719-720 [1919]; *El* v. *Newark Star-Ledger*, 131 N. J. L. 373, 382 [1944]), and he would therefore have tackled the question of causation; Counihan, J., also dissenting, did go on to that question and would have held that it was enough that the injury was one arising out of or in the course of the employment.

holding that the violations there involved did so "charac-terize" the employment, although in none of them was the question squarely confronted or discussed.[4] That reading is adopted by Locke, Workmen's Compensation, § 288 (1968). Like the court in *Paltsios's Case*, we do not reach the question. For we are persuaded that there was an actual and not merely an hypothesized or presumed causal con-nection between the violation and the injury. On this point we disagree with the single member and the reviewing board, but it is not a disagreement as to the findings of fact. Accepting exactly the single member's fact findings, we think it was error as matter of law (see *Thayer's Case* and *Morris's Case*, both *supra*) for the single member to conclude, as he did, that a causal connection was not made out.

The single member thought the injury was not suffered in the "operation" of the tractor but rather in the distinct process of unloading the hay. Such a view seems to us unduly restrictive. The question of what is comprehended in the operation of a vehicle has come up in a variety of contexts, and it is of course a dubious procedure to take an interpretation correct for one context and apply it straight away to another, for the surrounding text or policy may be quite different. Yet the present case seems to fall within a core meaning of "operation" that can hardly be denied. Even if the employee had been injured in the act of removing the hay from the front-end loader with the tractor at dead rest, he might well be thought still involved in the operation of the tractor used for loading and unloading; but in fact the motor was running, the tractor was in motion, and the employee was striving to control it at the time of the

---

[4] Something might turn on the nature of the violation. Where the violation consisted of a minor's working without a required employment permit, as in *Juozapaitis's Case*, it was natural to think that c.152, § 28, was satisfied by any injury arising from the employment, while closer connection of violation to injury might appear necessary where the violation consisted of the minor's operating a specific kind of machine or the like. Compare *Hertz Drivurself Stations, Inc.* v. *Industrial Commn.* 254 Wis. 308 (1949), with *Connor Lumber & Land Co.* v. *Industrial Commn.* 6 Wis. 2d 171 (1959). But on this question we express no opinion.

injury. This is enough, unless we are to insist on a very narrowly literal interpretation of the word.[5]

The employer argues that, if c. 152, § 28, is applicable and double compensation is to be paid, still the medical expenses of § 30 are on a special footing and should be held not among "the amounts of compensation hereinafter provided" to which § 28 refers. The question is not an easy one and we have no direct precedents.

It is true that the costs of medical services are customarily paid not to the employee but to those furnishing the services,[6] so that in mode of payment, at least, the employee is not being compensated. The word "compensation" itself (or variant), while appearing in c. 152, §§ 34, 35, 35A, and 36, does not appear in § 30, except in the statement, rather equivocal for the present inquiry, that the provisions of § 30 apply as long as the medical services are necessary, "notwithstanding the fact that maximum compensation under other sections of this chapter may have been received by the injured employee." It may be noted, too, that the medical expenses payable are not according to a fixed statutory measure, as other benefits typically are, so that the reference in § 28 to "the amounts . . . hereinafter provided" is somewhat awkward as applied to the former.

Nevertheless, in the opinion of a majority of the court, § 28 does not stop short of medical costs. Textually, these costs, dealt with in § 30, are the first in the list of benefits described in the sections following § 28. As was said of medical costs when the statute was in simpler and shorter form, "The collocation of § 5 [the old provision for medical services] and its subject matter show that its benefits are a

---

[5] On "operation" in varying contexts, see *Commonwealth* v. *Henry*, 229 Mass. 19, 22 (1917); *Cook* v. *Crowell*, 273 Mass. 356, 358 (1930); *Jenkins* v. *North Shore Dye House, Inc.* 277 Mass. 440, 445 (1931); *Blair* v. *Boston Elev. Ry.* 310 Mass. 1, 4 (1941); *Diggins* v. *Theroux*, 314 Mass. 735, 736-737 (1943); *Peloquin* v. *Robert Northridge Furniture Co.* 338 Mass. 107, 109 (1958); *Nichols & Co. Inc.,* v. *Travelers Ins. Co.* 343 Mass. 494, 497 (1962); *Travelers Ins. Co.* v. *Safeguard Ins. Co.* 346 Mass. 622, 624 (1964); *Magoun* v. *Liberty Mut. Ins. Co.* 346 Mass. 677, 681 and n. 4 (1964); *Improved Mach. Inc.* v. *Merchants Mut. Ins. Co.* 349 Mass. 461, 464 (1965).

[6] In this respect *Panasuk's Case*, 217 Mass. 589 (1914), was exceptional. Cf. *Klapacs's Case*, 355 Mass. 46 (1968).

part of the compensation to which the workman is entitled." *Panasuk's Case,* 217 Mass. 589, 592 (1914). See *Wahlberg* v. *Bowen,* 229 Mass. 335, 337 (1918); *MacAleese's Case,* 308 Mass. 513, 514-515 (1941). With due regard to the dangers of shifting from one context to another, we note that medical expenses have been held to be part of the "compensation" under § 15, a section providing that, when judgment is recovered against (or settlement made with) a third person legally liable for the injury, the insurer shall be reimbursed out of the proceeds for compensation previously paid by it; it is only from the balance of the proceeds, after insurer's reimbursement including reimbursement of medical costs, that the employee secures any recovery. *Bruso's Case,* 295 Mass. 531 (1936). *Meehan's Case,* 316 Mass. 522 (1944). Cf. *Thayer's Case,* 345 Mass. 36, 43 and n. 5 (1962). But beyond the textual disputations is the proposition that payment of medical costs is realistically compensation to the employee no less than the other major items.[7] A doubling provision may have a punitive aspect, but it may also be thought a tacit acknowledgment of the fact that the Workmen's Compensation Act ordinarily affords the employee rather slim recovery, which deserves to be increased down the line when the employer is conceived to be seriously at fault. We should add that a recent decision in another jurisdiction treats medical costs as "compensation" for the purpose of figuring an extra charge of fifteen per cent payable to the employee where the employer is responsible for a violation of statute, though it must be granted that the pertinent provisions of that workmen's compensation law do not exactly track the language of our § 28. *Martin* v. *Star Cooler Corp.* 484 S. W. 2d 32, 35-36 (Ct. App. Mo. 1972).[8]

---

[7] Under § 27, an employee injured by reason of his own serious and wilful misconduct may not recover "compensation" (though his dependents are not barred if the injury results in death): it seems fairly clear that the "compensation" denied here extends to medical expenses.

[8] Missouri Annotated Statutes, § 287.120, subsec. 4, stated: "Where the injury is caused by the failure of the employer to comply with any statute in this state, or

Cf. *Matthews* v. *Favey Linen Supply, Inc.* 110 R. I. 558 (1972). But cf. *Matter of Industrial Commr.* v. *McCarthy*, 295 N. Y. 443, 448-449 (1946).

Two points remain. (1) It seems now agreed between the parties that the cost of special shoes belongs in the category of medical expenses; thus it is to be doubled as paid from time to time. (2) Under § 35A, certain described persons are "conclusively presumed" to be wholly dependent for support on an employee, with the result that additional compensation is paid. Subsection (d) reads: "A parent [presumed dependent] upon an unmarried child under the age of eighteen." The Superior Court read this in a plural sense as meaning an allowance for each parent. We think the subsection when read in conjunction with the rest of the section, and with an eye also to § 32 (e) (parent as presumed dependent of deceased employee), yields a single not a plural meaning, and so the Industrial Accident Board held.[9] Cf. *Dembinski's Case*, 231 Mass. 261, 264 (1918); Locke, Workmen's Compensation, § 392, p. 476 (1968). (This single allowance is, however, to be doubled under § 28.)

The case is remanded to the Superior Court for modification of the decree as indicated in the paragraph above; otherwise the decree is affirmed. Costs of this appeal are to be determined by a single justice of this court. See *Garnhum's Case*, 349 Mass. 473 (1965).

*So ordered.*

---

any lawful order of the commission, the compensation and death benefit provided for under this chapter shall be increased fifteen per cent." Section 287.140, subsec. 1, stated: "In addition to all other compensation, the employee shall receive and the employer shall provide . . . [medical and related treatment]."

[9] The question of interpretation was mentioned but left open in *Juozapaitis's Case*, 335 Mass. 137, 140 (1956).