JOSEPH H. WILSON *vs.* ISAIAH GRAY & others.

Suffolk.   Nov. 26, 1878. — June 27, 1879.   COLT & MORTON, JJ., absent.

The words "regularly employed," in the St. of 1873, c. 284, § 1, exempting a vessel "regularly employed in the coasting trade" from compulsory pilotage, include the case of a vessel actually and legally so employed at the time the services of a pilot are tendered, even though the vessel is sailing under a register, and is not continuously so employed.

CONTRACT against the owners of a vessel for pilotage. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court on appeal, on agreed facts, the material parts of which appear in the opinion.

*J. B. Richardson,* for the plaintiff.

*F. Dodge,* for the defendants.

LORD, J.   The decision in this case depends upon the true construction of the St. of 1873, c. 284, § 1, which is in these words: "No vessel regularly employed in the coasting trade, declining the services of a pilot, shall be obliged to pay compulsory pilotage into or out of any port in this Commonwealth."

The bark Frank Lambirth of Boston was built at Bath, Maine, in September 1876, is registered at Boston, has always sailed under a register, and not under a coasting license. From Bath to Calais, Maine, she went in ballast, and there took in a cargo of deals for Liverpool, England. From Liverpool she went to South America, thence to the East Indies, thence to Amsterdam. These voyages were under various charter-parties. From

Amsterdam to Hampton Roads she came in ballast for orders. She lay in Hampton Roads a week; went to Philadelphia, and there took on board a cargo of coal for Boston. She was entered and cleared at Norfolk and Philadelphia, and her captain gave the ordinary bills of lading for the cargo of coal, agreeing to deliver it in Boston. The plaintiff is a duly commissioned pilot for the port of Boston, and duly tendered his services upon pilotage ground, and was the first pilot to offer his services on her inward voyage, and his offer was refused by the master; and there is no controversy that the plaintiff is entitled to recover, unless the bark comes within the provision of the above statute in relation to coastwise vessels. Other facts are reported bearing upon the question of the intentions of the owners of the vessel in reference to her employment, which we do not deem it necessary to consider.

The only question is, Was this vessel, at the time of tender of services by the plaintiff, "regularly employed in the coasting trade," within the meaning of the statute? The word "employed," although answered by any present occupation, is more commonly used as signifying continuous occupation, and, although a single act of trading answers the phrase "employed in trade," yet this phrase also ordinarily imports continuous business, and when to these words is prefixed the word "regularly," the argument is a very strong one that the use of them is intended to import something more than a single transaction, and to require something in the nature of permanence in the employment. It is, however, true that a vessel, properly documented, sailing from Philadelphia to Boston with a cargo of coal, duly cleared, with bills of lading signed and delivered, is, in point of fact, at the time regularly employed in the coasting trade. And the question arises which of these two constructions is the one intended by the Legislature.

The general purposes of the laws regulating pilotage and exemption of particular vessels are quite obvious. It is our duty to give that construction to the statute which will be consistent with such general purposes and with the words of the statute, and shall tend to make certain, clear and definite the rights and duties of all parties; and that construction which is consistent with the language of the statute and which makes certain the re-

spective rights and duties of masters and pilots is to be adopted, rather than one which leaves such rights and obligations uncertain, doubtful, and tending to controversy and litigation. And we think that the construction of the statute which best subserves this end is that which makes the liability depend upon the fact, rather than upon the intentions or purposes, secret or disclosed, of the owners of the vessel. In our view, therefore, if, in point of fact, the vessel is actually employed in a coastwise business, regularly documented and cleared, she must be deemed to be within the exemption. With this construction there can never be room for doubt or litigation.

Upon a different view of the statute, the first coastwise voyage must always be a subject of controversy; for, if the purpose of the owners were to make that the constant, continuous and permanent business of the vessel, she would be as really employed in the coasting trade upon the first as upon the hundredth voyage. If, however, this coastwise voyage was merely made for the purpose of finding a cargo upon the coast for a foreign voyage she would not then be regularly employed in the coasting trade. Nor would this be the only embarrassment. If the owners chose to alternate the voyages coastwise and foreign, would the vessel then be regularly employed in the coasting trade? Certainly, if the alternation were in different years, it could not be contended that, during the years in which she was engaged in the coasting trade, she must not be held to be regularly employed in the coasting trade. And where would be the test between alternate voyages and alternate years, by which the regular employment should be determined?

*Tilley* v. *Farrow*, 14 Mass. 17, was an action by a pilot for fees, because of the refusal of the master of the vessel to accept his services as a pilot out of the port of Boston. It arose under the St. of 1796, *c.* 85, which excepted coasters and fishing vessels from the provisions of the act. The vessel was on her first voyage, bound from Boston to Alexandria, and thence upon a foreign voyage, upon which she proceeded. She was a registered vessel; and it was contended by the plaintiff that the exception was to be construed as applicable to vessels enrolled and licensed for the coasting trade only. The court, however, held that the vessel was a coaster within the meaning of the act.

For a long series of years, the words "coaster" and "coasting vessel" seem to be used in the statutes, not only indiscriminately, but alternately. The decision in *Tilley* v. *Farrow* is in harmony with the result at which we have arrived in this case; and it is more nearly like the present than any reported case.

*Judgment for the defendants.*