## EDWARD F. THAYER'S CASE.

Suffolk.   May 16, 1962. — October 3, 1962.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act,* Double compensation, Serious and wilful
misconduct of one exercising superintendence, Filing of claim.   *Words,*
"Serious and wilful misconduct," "Exercising . . . superintendence,"
"Compensation."

Evidence in a workmen's compensation case that a highway contractor's
   foreman in charge of the use of the equipment, being dissatisfied with
   the slow speed at which a tournapull, a heavy piece of equipment, was
   being operated over a "haul road" by an experienced employee of the
   contractor, took over the controls of the tournapull, although he, the
   foreman, was inexperienced in its operation, drove it with a maximum
   load down the "haul road" at excessive speed despite repeated warnings
   by the employee, seated beside him, and refused the employee's request
   to slow down at a sharp turn, whereupon the tournapull "jackknifed"
   and the employee was thrown out and injured, warranted a finding that
   the foreman was guilty of "serious and wilful misconduct" within G. L.
   c. 152, § 28.   [39–40]
The phrase "exercising the powers of superintendence" in § 28 of the
   Workmen's Compensation Act, G. L. c. 152, should be given the same
   construction as the similar phrase in § 1 of the Employer's Liability Act,
   G. L. c. 153.   [40–41]
In a workmen's compensation case where there was evidence that a high-
   way contractor's foreman in charge of the use of the equipment, being
   dissatisfied with the slow speed at which a tournapull, a heavy piece of
   equipment, was being operated over a road by an experienced employee
   of the contractor, took over the controls of the tournapull despite an
   objection by the employee that the foreman was inexperienced in its
   operation and subsequently told the employee, seated beside him, to "sit
   there and be quiet" when the employee protested the foreman's manner
   of operating the tournapull, which ultimately caused it to "jackknife"
   on a sharp turn in the road and the employee to be thrown out and
   injured, a finding that the foreman was "exercising the powers of super-
   intendence" within G. L. c. 152, § 28, was warranted.   [41]
The requirement of § 41 of the Workmen's Compensation Act, G. L. c. 152,
   that a claim for compensation be filed within six months after injury
   applies to a claim for double compensation under § 28.   [41–43]
Late filing of a claim for double compensation under § 28 of the Work-
   men's Compensation Act, G. L. c. 152, will not be excused under § 49
   on the ground of absence of prejudice through the delay unless it is
   shown that the employer as well as the insurer was not prejudiced.
   [43–44]

Payment of compensation to an injured employee under § 26 of the Workmen's Compensation Act, G. L. c. 152, pursuant to an agreement for compensation made under § 6 did not of itself prevent under § 49 barring of a claim for double compensation under § 28 by reason of failure to file it seasonably. [44–45]

In a workmen's compensation case where no contention was made that witnesses were unavailable or evidence lost because of delay for over three years in filing a claim for double compensation under G. L. c. 152, § 28, and there was evidence that shortly after the employee's injury both the employer and the insurer had knowledge of or full opportunity to discover facts on which the injury could have been found to have been caused by "serious and wilful misconduct" of a supervising foreman "exercising the powers of superintendence," a finding was warranted that within § 49 both the employer and the insurer were not prejudiced by the delay in filing the claim. [45–46]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Morton, J.*

*Laurence S. Locke* for the employee.

*Henry E. Foley* (*Henry P. Monaghan* with him) for the employer.

KIRK, J. The employee (Thayer) appeals from a final decree dismissing his claim for double compensation under G. L. c. 152, § 28, as amended through St. 1943, c. 529, § 9.

We summarize the facts relating to the injury. In the spring of 1957 the employer, one Fitzgerald, was engaged in the construction of an extension of Route 128 in Gloucester. Thayer was employed by Fitzgerald as an operator of a unit of heavy construction equipment known as a tournapull which was used to carry excavated material to a dumping area. The tournapull weighed about twenty-two tons and would "carry any load put on it, 25 to 30 tons." Considerable skill was required to operate it.

One Winslow was employed by Fitzgerald as a foreman who supervised the operations of the road equipment, including the tournapull.

On the morning of May 1, 1957, Thayer was hauling blasted rock in the tournapull over the "haul road" to the dumping area. The "haul road," approximately one-half mile long, was straight for about one half of its length and then turned to the left at a forty degree angle. Thayer

operated the tournapull, "loaded to the limit," at a speed of five to eight miles an hour. He testified that because of the condition of the road and the weight of the load it was "impossible to operate the equipment any faster . . .; any faster would be dangerous and . . . suicide."

After the lunch period on May 1, when Thayer was driving the tournapull with a maximum load, Winslow stopped him and told him "that he could be going faster, that they were not getting enough loads." Thayer replied that he could not "possibly be going any faster."

Winslow was irritated and told Thayer to push over stating "that he [Winslow] would try it and see if he . . . could not get more speed." Thayer objected that Winslow was inexperienced in the operation of the tournapull. Winslow, nevertheless, took over the controls. Thayer seated himself on a box in the cab to the right of the controls. Winslow drove the tournapull down the "haul road," periodically shifting to higher gears. When he reached a speed of ten miles an hour, Thayer cautioned Winslow that "he was 'revving' it up a little too fast." Winslow replied that he knew what he was doing and told Thayer to "sit there and be quiet." A similar warning by Thayer at fifteen to twenty miles an hour was disregarded. As the tournapull approached the forty degree left turn at that speed, Thayer told Winslow to "brake it down" to a reasonable speed. Winslow refused. Winslow was unable to negotiate the turn. The tournapull "jackknifed." Thayer was thrown out and injured.

The board found that "Winslow was intrusted with and exercising the powers of superintendence on work being done by . . . [Fitzgerald]; . . . [Thayer] was given orders by him and was under his supervision. . . . [T]he operation of the tournapull by . . . Winslow, at maximum speed, despite the pleading and repeated warnings by . . . [Thayer], an experienced operator, involves conduct of a quasi criminal nature; . . . Winslow was doing something with the knowledge that it was likely to result in serious injury and displayed a wanton and reckless disregard of its probable consequences."

The board concluded "that the injury suffered by . . . [Thayer] was as [a] result of the serious and wilful misconduct of . . . Winslow, a person regularly intrusted with and exercising the powers of superintendence for the employer" and ordered "that the insurer pay . . . [Thayer] the extra or double compensation to which he is entitled under § 28 of the Act, as amended."

The findings and decision of the board must be sustained unless lacking in evidential support or tainted by some error of law. *Hachadourian's Case*, 340 Mass. 81, 85, and cases cited.

General Laws c. 152, § 28, provides in pertinent part: "If the employee is injured by reason of the serious and wilful misconduct of an employer or of any person regularly intrusted with and exercising the powers of superintendence, the amounts of compensation hereinafter provided shall be doubled. In case the employer is insured, he shall repay to the insurer the extra compensation paid to the employee. If a claim is made under this section, and the employer is insured, the employer may appear and defend against such claim only."

In support of the decree the employer contends that: (I) the evidence does not support the board's finding that Winslow's action constituted "serious and wilful" misconduct; (II) although Winslow was regularly intrusted with the powers of superintendence, the evidence does not support the board's finding that in causing the injury Winslow was "exercising the powers of superintendence"; and (III) Thayer's claim for extra compensation under § 28 was not seasonably filed. We deal with each of these contentions.

(I) The nature of the misconduct which comes within the ambit of the phrase "serious and wilful" in § 28 was fully discussed by Qua, J., in *Scaia's Case*, 320 Mass. 432, 433–434, where, among other things, it was stated (citing *Burns's Case*, 218 Mass. 8, 10) that such misconduct " 'is much more than mere negligence, or even than gross or culpable negligence. It involves conduct of a quasi criminal nature, the intentional doing of something either with the

knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences.' "

"The question whether an employee's . . . [injury] was caused 'by reason of . . . serious and wilful misconduct . . .' is one of fact" (*Diaduk's Case*, 336 Mass. 5, 7) and necessarily depends in each instance on the particular facts of the case presented. We have reviewed the employer's arguments on this factual question. We are unable to say that the board was not warranted in finding that the operation of this heavy, fully loaded piece of equipment by Winslow, an inexperienced driver, at a reckless rate of speed, in total disregard of the repeated warnings by an experienced driver constituted "serious and wilful misconduct" within § 28.

(II) The phrase, "exercising the powers of superintendence," in G. L. c. 152, § 28, is substantially identical with that used in § 1 of the Employer's Liability Act[1] with reference to the negligence of a superintendent. In interpreting the quoted phrase this court has said, "The employer is not answerable for the negligence of a person intrusted with superintendence, who at the time, and in doing the act complained of, is not exercising superintendence, but is engaged in mere manual labor, the duty of a common workman. . . . Unless the act itself is one of direction or of oversight, tending to control others and to vary their situation or action because of his direction, it cannot fairly be said to be one in the doing of which the person intrusted with superintendence is in the exercise of superintendence." *Cashman* v. *Chase*, 156 Mass. 342, 344. Or, as stated by Holmes, C.J., in *Joseph* v. *George C. Whitney Co.* 177 Mass. 176, 178, "we are of opinion that by a true construction of the statute the superintendence must contribute as such, and that when . . . it had nothing to do

---

[1] Statute 1887, c. 270, § 1, now G. L. c. 153, § 1, refers to the rights of an employee "[w]here . . . personal injury is caused to an employee . . . [b]y reason of the negligence of any person in the service of the employer, entrusted with and *exercising superintendence*, whose sole or principal duty is that of superintendence" (emphasis supplied).

with the injury qua superintendence, the case is not within the act.'' See *Buckley* v. *Dow Portable Elec. Co.* 209 Mass. 152, 153.[2]

We think that this interpretation should be given to the parallel phrase in G. L. c. 152, § 28, as amended. A majority of the court take the view that under this interpretation it could be found, as the board did find, that Winslow was exercising the powers of superintendence and that the exercise of the powers of superintendence could justifiably have been found to have contributed proximately to Thayer's injury. See and compare *Sarrisin* v. *S. Slater & Sons,* 203 Mass. 258, *Buckley* v. *Dow Portable Elec. Co.* 209 Mass. 152, *Durgin's Case,* 251 Mass. 427, with *McPhee* v. *New England Structural Co.* 188 Mass. 141, *Hourigan* v. *Boston Elev. Ry.* 193 Mass. 495, *Coates* v. *Soley,* 194 Mass. 386, *Shannon* v. *Shaw,* 201 Mass. 393.

(III) With regard to the third contention of the employer, that Thayer's claim for extra compensation was not seasonably filed, we state the time factors. The injury to Thayer occurred on May 1, 1957. Thereafter, Thayer and the employer's insurer executed an agreement (G. L. c. 152, § 6) providing for payment to Thayer of compensation due him under G. L. c. 152, § 26. Weekly payments to Thayer have been made under this agreement.[3] The claim for extra or double compensation under § 28 was filed on July 25, 1960.

The resolution of the issue as to whether the claim for extra compensation was seasonably filed requires an analysis of the pertinent sections of the statute.

(a) We deal first with the scope of the provisions of § 41, which so far as germane are: ''No proceedings for compensation for an injury shall be maintained unless a notice

---

[2] This case dealt with the interpretation and application of § 1 of the Employer's Liability Act and was cited in *Durgin's Case,* 251 Mass. 427, 430, as authority for the interpretation and application of the phrase ''exercising the powers of superintendence'' as it appeared in the Workmen's Compensation Act (G. L. c. 152, § 28).

[3] The board also found, on ample evidence, that the claimant has received adequate medical treatment since the time of the accident.

thereof shall have been given to the insurer or insured as
soon as practicable after the happening thereof, and unless
the claim for compensation with respect to such injury has
been made within six months after its occurrence . . . ."
At the outset we hold that this provision relative to no-
tice of injury and making of claim applies to proceedings
brought under § 28 (for "extra" or "double" compensa-
tion) as well as to proceedings under § 26 for ordinary com-
pensation.   To support this conclusion we do not think it
is necessary or helpful to dwell upon theories of law (e.g.,
whether § 28 provides for an imposition of a penalty upon
the employer rather than strictly a compensatory award
to the employee) which are extraneous to the Workmen's
Compensation Act itself.   This court said in *Royal's Case*,
286 Mass. 374, 378: "The workmen's compensation act was
a new kind of legislation in this Commonwealth.   It dif-
fered in almost every essential particular from existing
equitable or common law remedies.   It substituted an op-
tional method of accident insurance with specified ranges
of payments in place of common law rights and liabilities
for large classes of employees and employers.   It provided
a procedure all its own. . . .   [T]he legislative intent . . .
was to cover the whole field to which the statute relates and
to supersede all other provisions of law touching that sub-
ject."   We are convinced from a reading together of §§ 26,
28, and 41, all of which (in the pertinent parts quoted
below[4]) were in the original act, that the word "com-

---

[4] Section 26, as amended through St. 1943, c. 529, § 8, provides: "If an
employee . . . receives a personal injury arising out of and in the course of
his employment, . . . he shall be paid compensation by the insurer or self-
insurer, as hereinafter provided."   Section 28 provides: "If the employee is
injured by reason of the serious and wilful misconduct of an employer or of
any person regularly intrusted with and exercising the powers of superin-
tendence, the amounts of compensation hereinafter provided shall be doubled.
In case the employer is insured, he shall repay to the insurer the extra com-
pensation paid to the employee.   If a claim is made under this section, and the
employer is insured, the employer may appear and defend against such claim
only."   Section 41 provides: "No proceedings for compensation for an in-
jury shall be maintained unless a notice thereof shall have been given to the
insurer or insured as soon as practicable after the happening thereof, and
unless the claim for compensation with respect to such injury has been made
within six months after its occurrence, or, in case of the death of the em-
ployee, or in the event of his physical or mental incapacity, within six months
after death or the removal of such incapacity . . . ."

pensation," as used in § 41, was used generically and was
intended by the sponsors and enactors of the original legis-
lation to comprehend all proceedings available under the
statute to obtain monetary awards for an injury to an em-
ployee.[5]   The extra or double award which enures to the
benefit of the injured employee under § 28 constitutes, in
our opinion, compensation as that term is used in the Work-
men's Compensation Act.   Accordingly, Thayer's claim for
double compensation falls within the requirement of § 41
that a claim for compensation be filed within six months
after the occurrence of the injury.

(b) It follows from our construction of § 41 that Thay-
er's claim for double compensation must fail, unless the
late filing is excused under the exculpatory provisions of
§ 49 which we shall now discuss.   So far as relevant to the
question before us, § 49 provides: ''Failure to make a claim
within the time fixed by section forty-one shall not bar pro-
ceedings under this chapter if it is found that it was occa-
sioned by mistake or other reasonable cause, or if it is
found that the insurer was not prejudiced by the delay.   In
no case shall failure to make a claim bar proceedings if the
insurer has executed an agreement in regard to compensa-
tion with the employee or made any payment for compensa-
tion under this chapter.''   It seems clear that the general
purpose of the quoted provisions is to preserve the right of
the employee to compensation where the failure to make
the claim within the time prescribed is not due to the em-
ployee's fault or where, even though he may be at fault, the
rights of the party by whom compensation would have to
be paid have not been prejudiced by the delay.   In the ordi-
nary case under § 26, it is the ''insurer'' (see c. 152, § 1 [7])
who must pay the compensation.   Hence the question of
prejudice to the ''insurer'' is given significance under § 49
(and in notice provisions in § 44).   In cases brought under
§ 28, however, where double compensation is sought, al-

---

[5] Other sections of c. 152 wherein the word ''compensation'' doubtless has
reference to § 28 as well as to § 26 awards are, for example, §§ 2, 2A, 7A, 7B,
25A, 29, 39.

though the "insurer" must in the first instance pay the extra compensation to the employee, it is provided that "[i]n case the employer is insured, he shall repay to the insurer the extra compensation paid to the employee," and, further, that "[i]f a claim is made under this section, and the employer is insured, the employer may appear and defend against such claim only." It was in the light of these provisions that we said in *West's Case,* 313 Mass. 146, 154, "The ultimate burden . . . [of paying extra compensation] is placed upon the employer" who "becomes a real party in interest." These considerations lead us to think that the exculpatory provisions of § 49 must in fairness be read so that where a late claim for extra compensation under § 28 is involved the rights not only of the insurer but of the employer as well be guarded against prejudice caused by the delay in filing the claim.

With this principle in mind, we address ourselves, in the inverse order, to the provisions of § 49 which are relevant to the issue before us. First, we think that neither the fact that an agreement has been made between the employee and the employer's insurer for the payment of compensation under § 26, nor the fact that such compensation, without agreement, has been paid by the insurer to the employee will per se excuse the failure of the employee to file within the time prescribed in § 41 a claim for extra compensation under § 28. The reasons which induced the Legislature to declare that a claim would not be barred by late filing where there was an agreement to pay or payment of compensation by an insurer are so apparent in relation to a claim under § 26 as not to require lengthy exposition. Payment of ordinary compensation or an agreement in regard to ordinary compensation by an insurer at least may be said to be a recognition by the insurer that the employee has asserted a claim that he has sustained an injury which arose out of and in the course of his employment. There are, however, other elements already adverted to and subsequently to be considered (serious and wilful misconduct; exercising powers of superintendence) which are essential to the establish-

ment of a claim under § 28, but which are not essential to
the establishment of a claim under § 26. These additional
elements cannot, by necessary implication, be said to be an
integral part of a voluntary arrangement for payment of
ordinary compensation. The absence of these essential ele-
ments has a bilateral effect with respect to a late claim for
extra compensation under § 28. On the one hand, an em-
ployee who is receiving or who has an agreement with his
employer's insurer to receive compensation under § 26 can-
not for that reason alone be considered justified in not filing
a claim for extra compensation as required in § 41. On the
other hand, neither an employer, who may play no part in
the payment of, or in an agreement to pay, compensation
under § 26, nor an insurer who has paid or agrees to pay
compensation under § 26, can thereby fairly be considered
to have waived conclusively the issue of prejudice with re-
spect to a late claim for extra compensation under § 28.
Accordingly, we hold that the payment to Thayer of com-
pensation under § 26 by Fitzgerald's insurer does not of
itself entitle Thayer to file a claim for compensation under
§ 28 after six months from the time of injury.

We next consider the provision of § 49 which states that
"Failure to make a claim within the time fixed by section
forty-one shall not bar proceedings under this chapter . . .
if it is found that the insurer was not prejudiced by the de-
lay." Reading this provision in consonance with the prin-
ciple of fairness earlier stated it appears to us that in order
to excuse the late filing of a claim for extra compensation it
must be shown that the delay prejudiced neither the insurer
nor the employer. Lack of prejudice to the insurer alone
does not excuse the late filing of a claim under § 28 because,
as we have already indicated, the employer who is bound to
reimburse his insurer is a "real party in interest."

In the case before us the board has found that neither the
insurer nor the employer was prejudiced by the late filing
of the claim under § 28. Specifically, the board found that
the insurer "had ample opportunity to investigate all
phases of the case and in all probability had done so prior

to . . . payment of compensation'' and that the employer
''had full knowledge of the circumstances of the injury.''
We recognize that knowledge of facts which would negative
prejudice in the case of a claim under § 26 is not necessarily
inclusive of facts which would negative prejudice in the
case of a claim under § 28 for the reason, already alluded
to, that a claim under § 26 requires only that the employee's
injury be one ''arising out of and in the course of his em-
ployment'' whereas a claim under § 28 requires *in addition*
that the injury be caused ''by reason of the serious and wil-
ful misconduct of an employer or of any person regularly
intrusted with and exercising the powers of superintend-
ence.''    There was evidence before the board that, after
driving the injured Thayer to the hospital, Winslow, who
caused the accident, reported the accident to his employer;
that within one-half hour of this report Winslow was dis-
charged; and that thereafter the employer's insurer and
Thayer entered into the agreement for compensation under
§ 26.    Both Thayer and Winslow testified at the hearing.
No contention is made that witnesses were unavailable be-
cause of the delay, or that evidence has been lost.    On this
record we are unable to say that the finding of lack of
prejudice as to both insurer and employer was without evi-
dential support.    It could be found that shortly after the
injury both had knowledge of, or at least full opportunity
readily to discover, facts which could establish their respec-
tive liabilities under § 28.

The view which we have taken of the board's finding on
this exculpatory clause of § 49 makes it unnecessary to con-
sider the question whether, under the remaining clause of
§ 49, there was reasonable cause for Thayer's failure to file
his claim under § 28 until July 25, 1960.

The decree is reversed.    A decree is to be entered that
payment of extra compensation be made to the claimant as
awarded by the board.    Costs and expenses of this appeal
under G. L. c. 152, § 11A, shall be allowed by the single
justice.

*So ordered.*