DANIEL J. O'LEARY'S CASE.

Suffolk.   January 8, 1975. — March 6, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Workmen's Compensation Act,* Double compensation, Serious and wilful misconduct of one exercising superintendence.   *Words,* "Regularly," "Serious and wilful misconduct," "Exercising . . . superintendence."

In G. L. c. 152, § 28, respecting double compensation under the Workmen's Compensation Act, the phrase "any person regularly intrusted with and exercising the powers of superintendence" in-

cluded one of several fellow workers on a job selected by the employer, as required by a union contract, "to act as foreman" and to be "the only representative of the employer . . . [to] issue instructions to the workmen." [114-115]

On a claim for double compensation under the Workmen's Compensation Act, evidence warranted a finding that, after the claimant employee and a fellow worker had stated to their foreman that they were not supposed to work on steel beams in a certain condition, which was dangerous, the foreman ordered them to work on the beams at risk of dismissal. [115]

A finding that within G. L. c. 152, § 28, there was "serious and wilful misconduct" on the part of the foreman on a job involving work on large steel beams was warranted by evidence that such work had been designated as hazardous by the Commissioner of Labor and Industries, that a safety provision of a union contract prohibited job site erection of beams with certain potentially dangerous attachments thereto already in place and required removal of such attachments prior to erection, that equipment for removal of the attachments was available at the job site, that when beams were delivered to the job site with such attachments in place, two of the workmen stated to the foreman that they were not supposed to work on beams in that condition, but the foreman ordered them to proceed with the work at the risk of dismissal, and that they obediently proceeded with it with the attachments still in place, whereupon one of them was injured by the attachments. [115-117]

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Kalus, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Laurence S. Locke* for the employee.

*Anthony D. Pompeo* for the insurer.

QUIRICO, J. This is an appeal by Daniel J. O'Leary, an employee, from a final decree of the Superior Court denying his claim for a doubling of workmen's compensation benefits under G. L. c. 152, § 28.[1] A single

---

[1] General Laws c. 152, § 28, as appearing in St. 1943, c. 529, § 9, provides: "If the employee is injured by reason of the serious and

member of the Industrial Accident Board, after hearing, ordered that compensation be paid for periods of the employee's partial and total incapacity, increased by an amount based on the number of the employee's dependents, and for disfigurement and loss of function of his lower left extremity. The single member also found that the employee's injury was suffered "as a result of the serious and willful misconduct of . . . a person intrusted with and exercising the powers of superintendence for this employer, within the meaning and intent" of c. 152, § 28. Because of the latter finding, the single member ordered the insurer to double the amount of compensation to be paid. The findings and decision of the single member were affirmed and adopted by the reviewing board (board). The insurer appealed this decision to the Superior Court, where a judge of the Superior Court ordered the matter recommitted to the Industrial Accident Board for completion of findings and rulings by the board on certain motions and objections made by the insurer. The board ruled adversely to the insurer on all issues raised. Thereupon another judge of the Superior Court entered a final decree in essence (a) in accordance with the decision of the board in all respects save for the question of doubling compensation under § 28, and (b) denying the § 28 claim. The employee appealed therefrom to the Appeals Court and then applied to this court, for direct appellate review which we granted. See Mass. R. A. P. 11, 365 Mass. 854 (1974).

wilful misconduct of an employer or of any person regularly intrusted with and exercising the powers of superintendence, the amounts of compensation hereinafter provided shall be doubled. In case the employer is insured, he shall repay to the insurer the extra compensation paid to the employee. If a claim is made under this section, and the employer is insured, the employer may appear and defend against such claim only. The employment of any minor, known to be such, in violation of any provision of sections sixty to seventy-four, inclusive, or of section one hundred and four of chapter one hundred and forty-nine shall constitute serious and wilful misconduct under this section."

The sole question before us is whether the judge of the Superior Court erred in denying the § 28 claim for double compensation. He was obligated, and this court on appeal is obligated, to sustain the decision of the board, which supersedes that of the single member, *Haley's Case*, 356 Mass. 678, 679 (1970), if there was any evidence to warrant the conclusion that the employee was "injured by reason of the serious and wilful misconduct of an employer or of any person regularly intrusted with and exercising the powers of superintendence." G. L. c. 152, § 28. *Pigeon's Case*, 216 Mass. 51, 52 (1913). *Burns's Case*, 218 Mass. 8, 10 (1914). *Randolph's Case*, 247 Mass. 245, 248 (1924). The courts should sustain the determinations of the Industrial Accident Board whereever possible. *Bajdek's Case*, 321 Mass. 325, 326 (1947). *Vaz's Case*, 342 Mass. 495, 497 (1961). *Wax's Case*, 357 Mass. 599, 601-602 (1970). Applying the foregoing standards of review, we turn to a consideration of the evidence before the single member which bears on the question before us.

At the time of his injury, the employee was employed as a journeyman iron worker for Steel Products Erectors, Inc., the employer. On March 15, 1965, the employee and two fellow workers, James Gallagher and Louis Latino, went to work in Ipswich on the construction of the St. Joseph's Church. All three men were members of Local 57 of the International Association of Bridge, Structural and Ornamental Iron Workers (union local). The contract between this union local and this employer provided, "When two (2) or more employees are employed, one shall be selected by the employer to act as foreman and receive a foreman's wages, and the foreman is the only representative of the employer who shall issue instructions to the workmen." On the Ipswich job, Latino was the foreman.

The employee, the foreman and Gallagher, arrived at the construction site about 8 A.M. on the day in question, their first day of work on this particular job. When the

steel beams with which the men were to work were delivered to the job site, they had attached to them so called shear connectors or steel clips.

The shear connectors had been attached to the beams when they were fabricated in the shop of a steel fabricating company, certain officers of which were also officers of the employer in this case. Shear connectors are steel angle irons of approximately three inches in height, two inches in width, and three-eighths of an inch in thickness. They are affixed to the beams every six inches lengthwise and every two inches widthwise. These devices are attached to the beams to serve as bonds for the concrete which is poured around the beams after they are erected. The contract between the employer and the union local provided, under the heading "Safety Provisions": "it shall be mandatory for all employers to have all shear connectors such as studs and/or spirals field erected and secured. In the event shear connectors are shop erected and secured the shear connectors will be removed prior to field erection."

When the beams were delivered to the Ipswich job site, both the employee and Gallagher pointed out to the foreman that the beams had the shear connectors attached and that they were not supposed to work with beams in such condition. Although there was equipment at the site to detach the shear connectors, the foreman responded by telling the employee and Gallagher, in effect, that they had to choose between erecting the steel or going home. The single member found that "[t]hey obeyed the foreman's order to do the work rather than risk dismissal." No attempt was made to remove the shear connectors.

The employee sustained his injury sometime around 2 P.M., when he and Gallagher were working on a three-section set of beams. This set of beams had one end on the ground and the other on a wall, and was attached to a crane. The employee was tightening the bolts on one part of the beam when the foreman directed the crane

operator to disconnect the crane. In testifying as to what happened then, the employee said, "When this beam flopped over, these shear connectors caught my pants. They went through the outside pants and inside pants, my long drawers and cut my leg right along my knee." Two bones in his leg were broken, and he sustained other injuries.

The board found that it was the shear connectors which caught the employee's pants and which cut his leg. The board further found that the foreman, Latino, was entrusted with and exercising powers of superintendence for the employer on the day of the injury, and that his "order to get on with the work without removing the shear connectors . . . involved conduct of a quasi-criminal nature . . . [because the order was made] with the knowledge that it was likely to result in serious injury and [because the order] displayed a wanton and reckless disregard of the probable consequences." In support of this last finding, the board took notice that the Commissioner of Labor and Industries had, pursuant to G. L. c. 152, § 1 (4) (c), determined that structural steel and iron workers were engaged in a hazardous occupation. The board similarly noted that the contractual safety provisions such as the one involved in this case "are arrived at only after lengthy discussions and hard bargaining and serious study . . . [and] take into consideration the lessons learned from the practical experience gained in the building trades." This conclusion, in connection with a finding that all parties to the contract were aware of the shear connector provisions, served as a basis for the ultimate finding that "the injury suffered by O'Leary was as a result of the serious and willful misconduct of Latino, a person intrusted with and exercising the powers of superintendence for this employer, within the meaning and intent" of c. 152, § 28. We are of opinion that the board was fully warranted in making the quoted finding. It necessarily follows that the judge in the Superior Court erred in denying the § 28 claim.

The insurer contends that the evidence did not warrant the findings as to Latino, the foreman, (1) that he was a person regularly entrusted with and exercising powers of superintendence, (2) that he ordered the employee and Gallagher to work on the beams without removing the shear connectors, or (3) that his conduct amounted to "serious and wilful misconduct" within the meaning of G. L. c. 152, § 28. We do not agree with these contentions.

In asserting that the foreman could not have been found to be a person regularly entrusted with and exercising powers of superintendence, the insurer emphasizes the word "regularly," stating, "Latino was an acting foreman pursuant to the provisions in the agreement with the union, and not a regular or full-time foreman in the service of the employer." This argument is without merit. At the time the employee sustained his injury, Latino had been chosen by the employer to act as foreman under a contractual provision requiring the employer to select a foreman to be "the only representative of the employer who shall issue instructions to the workmen." The word "regularly" has meanings which vary considerably from context to context. *Lustenberger* v. *Boston Cas. Co.* 300 Mass. 130, 135 (1938). See Webster's Third New Intl. Dictionary 1913 (1961). In the particular statute here at issue, the word is simply designed to distinguish between a mere fellow worker who occasionally acts in a limited supervisory capacity and a person who is officially designated by the employer as the person in charge of a particular facet of the employer's business and who is actually engaged in a supervisory capacity at the time of the employee's injury. See *Thayer's Case*, 345 Mass. 36, 40-41 (1962). Comparable language in the Employer's Liability Act, G. L. c. 153, § 1, has been interpreted by this court as primarily intended to differentiate between a mere volunteer and one actually designated by the employer as a super-

intendent. Continuity of service in the capacity of super-intendent is not required. Cf. *Wilson* v. *Gray*, 127 Mass. 98, 99-100 (1879).

The insurer's second major argument is that the evidence did not support the board's finding that the foreman ordered the employee and Gallagher to work on the beams with the shear connectors attached. The employee's actual testimony on this point was that after he told the foreman they were not supposed to work on such beams, the foreman said that they had a job to do and "if you didn't want to do it, you know what you can do — leave." Gallagher testified that the foreman gave him much the same answer when he told the foreman the beams had shear connectors on them and were not supposed to be handled in such condition. And even the foreman testified that he told both men, "Either we have to start erecting this steel or we will go home. That's all." We hold that on this evidence the board was warranted in finding that the foreman's words amounted to an order to work on the beams with the shear connectors attached at the risk of dismissal, at least for that day or that job, if they did not do so.

The insurer's third major contention is apparently that, even assuming that the employee prevails on points one and two just discussed, the foreman's actions could not have been found to be serious and wilful misconduct. In *Scaia's Case*, 320 Mass. 432, 433-434 (1946), we said: "The 'serious and wilful misconduct' which lays the foundation for double compensation under § 28 of the act 'is much more than mere negligence, or even than gross or culpable negligence. It involves conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences.' *Burns's Case*, 218 Mass. 8, 10 [1914]. *Riley's Case*, 227 Mass. 55, 56-57 [1917]. *Beckles's Case*, 230 Mass. 272, 273 [1918]. *Randolph's Case*,

247 Mass. 245, 247 [1924]. *Durgin's Case,* 251 Mass. 427, 430 [1925]. *Silver's Case,* 260 Mass. 222, 224 [1927]. *McCarthy's Case,* 314 Mass. 610, 612 [1943]." See also *Thayer's Case,* 345 Mass. 36, 39-40 (1962). In *Scaia's Case, supra,* at 434, we also referred to Restatement: Torts, § 500 (1934), which we construed as requiring that "not only must the actor intentionally do the act upon which he is sought to be charged, but also he must know or have reason to know . . . facts 'which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.'" This principle of the original Restatement has been reaffirmed and clarified in Restatement 2d: Torts, § 500 (1965).

It is our opinion that under the foregoing principles the board was warranted in concluding that the foreman's actions amounted to serious and wilful misconduct. As determined by the Commissioner of Labor and Industries under G. L. c. 152, § 1 (4) (c), structural steel and iron work is hazardous. The contract between the employer and the union local to which the foreman, the employee, and Gallagher belonged prohibited the field or job site erection of beams with shop-attached shear connectors. The board found, as it was warranted in doing, that this contractual prohibition was, as labeled in the contract, a safety provision. It is not difficult to understand why it would be dangerous to work with large steel beams covered by sharp steel protrusions. Indeed, the concern of those who drafted the contract for these protrusions proved to be justified by the injury to the employee. The board found that the foreman was exercising the powers of superintendence when he ordered the men to work with these dangerous beams at the risk of dismissal even after they complained to him about the shear connectors; that "the employer, the union, its members, supervisors and foremen were aware of the provisions for the

removal of the shear connectors prior to field erection and that not to remove them was a potential danger"; and that the equipment for removing the shear connectors was at the job site. For a person exercising powers of superintendence deliberately to order workmen to disregard an important contractual safety provision, after the danger is called to his attention and when the means for complying with that safety provision are at hand, is an act which warrants a finding of serious and wilful misconduct within the meaning of G. L. c. 152, § 28.

The decree is affirmed except in so far as it denies the employee's claim for a doubling of his benefits under G. L. c. 152, § 28. The portion of the decree denying the claim under § 28 is reversed. As to that claim, a new decree is to be entered awarding the employee double benefits. See *Boardman's Case,* 365 Mass. 185 (1974). Costs and expenses of this appeal shall be determined and allowed by a single justice of this court.

*So ordered.*