## Jean M. Drumm's Case.

No. 08-P-51.

Suffolk. February 4, 2009. - April 10, 2009.

Present: Kantrowitz, Grainger, & Sikora, JJ.

*Workers' Compensation Act,* Double compensation, Serious and wilful misconduct of employer, Decision of Industrial Accident Reviewing Board.

The reviewing board of the Department of Industrial Accidents erred in awarding an employee double workers' compensation benefits pursuant to G. L. c. 152, § 28, on the ground that the employee's injury was due to the serious and wilful misconduct of the employer, where the record did not support a determination that the employer's conduct (i.e., failing to install required railings around a trap-door floor opening and instead sporadically enforcing its own warning system) attained a wanton and reckless disregard for safety that was quasi criminal in nature. [40-43]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Carey H. Smith* for the employer.

*Alma R. Arlos* for the employee.

GRAINGER, J. The employer and its workers' compensation insurer appeal from a decision of the Department of Industrial Accidents reviewing board (board) affirming the decision of an administrative judge. The board awarded the employee double compensation pursuant to G. L. c. 152, § 28, finding that the employee's injury was due to the serious and wilful misconduct of the employer.[1] We reverse.

*Background.* We summarize the facts found by the administra-

---

[1] In 1999, a different administrative judge had found liability for the injury and awarded benefits under G. L. c. 152, §§ 34A (permanent and total incapacity) and 36 (functional disability). In 2002, the employee submitted additional claims, including the § 28 claim. Only the § 28 claim is before us in this appeal.

tive judge and adopted by the board.[2] On Valentine's Day, 1991, the employee was working at a floral shop operated by the employer when she fell into an unguarded trap-door floor opening and tumbled to the floor below, sustaining serious injuries. The floor door, which covered a set of stairs leading down to the cellar, measured approximately eight feet by three feet. The floor door, when open, reveals what is not disputed to be a "floor opening" subject to the safeguards outlined in Massachusetts and Federal regulations.[3]

The employer relied upon a warning system of orange safety cones and chains to direct the employees' attention to the potential hazard and preclude the likelihood that anyone would fall into the opening when the door was open.[4] The workers, including the employee who had worked at the shop for five years, were aware of the floor door. The Occupational Safety and Health Administration had inspected the workplace in the early 1980's without commenting on the floor door, although recommending exit signs and fire extinguishers.[5] No other employee had ever sustained an injury related to the fact that the door was sometimes open during work hours.

There was conflicting testimony whether there was sufficient floor space between the open floor door and a table set against the wall where completed orders were placed; while ordinarily

---

[2]The administrative judge issued a first decision which resulted in a remand by the board based upon the failure to admit and consider the regulations governing trap doors discussed *infra*. The second decision provided additional findings. We recite facts from both.

[3]At the time of the injury, a Massachusetts regulation provided as follows:

"Pits and trap-door floor openings shall be guarded by floor opening covers of standard strength and construction. While the cover is not in place, the pit or trap openings shall be protected on all exposed sides by removable standard railings."

454 Code Mass. Regs. § 10.111(2)(c) (1988). Similarly, see 29 C.F.R. § 1910.23(a)(5) (1990).

[4]Mariette Moon, who was also an employee, testified that she never saw cones, railings, or chains. The judge considered her testimony, however, diminished by the fact that she had been fired by the employer for purloining flowers from the employer's stock.

[5]The record does not reveal whether the door was visible to the inspector but, at the least, indicates that the employer was not warned about it as a result of the inspection.

the space was sufficient, on Valentine's Day, a very busy day in the flower industry, the circumstances were not ordinary in that the pace was much brisker.

The employer's enforcement of the warning system was inconsistent, and the cones and chains were not in place at the time of the employee's accident. In any event they would not have physically prevented a person from falling into the opening. The judge found that the employee's injury was causally connected to the lack of safeguards when the door was open.

The administrative judge initially refused to admit the regulations into evidence and denied the employee's § 28 claim. However, after appeal to the board, the case was recommitted to the judge for admission and consideration of the regulations.[6] The judge then admitted the regulations and allowed the § 28 claim. The board affirmed. On appeal, the employer and insurer argue that (i) the judge and board improperly relied solely upon the regulatory violation when allowing the employee's claim,[7] (ii) the finding that the employer engaged in serious and wilful misconduct was an error of law, as the regulatory violation was not shown to be intentional, and (iii) the evidence was insufficient as a matter of law to support the finding of serious and wilful misconduct.

*Discussion.* We may set aside or modify the decision of the board, pursuant to G. L. c. 152, § 12(2), if the decision is, among other reasons, "[b]ased upon an error of law" or "[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14(7)(*a*)-(*d*), (*f*), (*g*), as appearing in St. 1973, c. 1114, § 3.[8]

---

[6]In his initial decision, the judge gave no reason for not admitting the regulations. The employer had argued that the employee failed to offer proof that the regulations applied to the flower shop premises. The board concluded that the regulations are safety standards for all workplaces and that no evidence had been offered to exempt the employer from compliance. On appeal, the employer and insurer do not contest the board's conclusion that the regulations are applicable.

[7]Our conclusion makes it unnecessary to address the employer's and the insurer's assertion, relying on *Armstrong's Case*, 19 Mass. App. Ct. 147, 150 (1984), that the judge committed error by basing his decision solely on the failure to follow the regulation. We note, however, that even a cursory reading of the judge's decision reveals that the judge's finding rested upon additional facts.

[8]We note that we may not review the board's decision under the "substantial

The judge found that, by failing to install the required railings and instead sporadically enforcing its own warning system, the employer engaged in serious and wilful misconduct, see G. L. c. 152, § 28. "The 'serious and wilful misconduct' which lays the foundation for double compensation under § 28 of the [workers' compensation] act 'is much more than mere negligence, or even than gross or culpable negligence. It involves conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences.' " *O'Leary's Case*, 367 Mass. 108, 115 (1975), quoting from *Scaia's Case*, 320 Mass. 432, 433-434 (1946). "[N]ot only must the actor intentionally do the act upon which he is sought to be charged, but also he must know or have reason to know . . . facts 'which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." *O'Leary's Case*, 367 Mass. at 116, quoting from *Scaia's Case*, 320 Mass. at 434, and citing Restatement (Second) of Torts § 500 (1965). See *Moss's Case*, 451 Mass. 704, 713-714 (2008).

We conclude that the record before us does not support a determination that the employer's conduct attained a wanton and reckless disregard for safety that was quasi criminal in nature; our cases and those of the Supreme Judicial Court in which § 28 liability was upheld have required conduct of a significantly greater magnitude than that shown here. *Armstrong's Case*, 19 Mass. App. Ct. 147 (1984), is instructive, involving a worksite where falling debris was a regular feature, and the employee, like three other workers before him, had refused to undertake work at a specific location because of the danger. At the foreman's order, however, the employee eventually complied, resulting in his permanent and total disability from falling timber. *Id.* at 149-150. Similarly, *O'Leary's Case*, *supra*, involved a deliberate order by a foreman to disregard an important safety provision, forcing an employee to work on steel beams having sharp steel protrusions called shear connectors, in violation of the collective bargaining

evidence" standard of G. L. c. 30A, § 14(7)(*e*), as the employer urges us to do. See G. L. c. 152, § 12(2), as amended by St. 1991, c. 398, § 32A.

agreement. 367 Mass. at 116-117. In *Memmolo's Case*, 17 Mass. App. Ct. 407 (1984), an employee was injured after the employer ignored a regulation requiring him to notify public utilities before conducting ground excavations, and a supervisor ordered the employee to continue digging despite the appearance of underground concrete. *Id.* at 409, 412. Finally, in *Paccia's Case*, 4 Mass. App. Ct. 830 (1976), a foreman ordered an employee to work in a trench that had not been shored up, contrary both to instructions from the general foreman and to regulations. *Id.* at 830. In sum, the deliberate disregard of a known safety require-ment in the face of admonitions to the contrary is a prevalent theme of these cases.[9]

By contrast, the failure, identical to that in *Paccia's Case*, to shore up a trench in violation of applicable regulations, but in circumstances lacking the admonition or contrary instruction, was found not to constitute serious and wilful misconduct. *Lopes's Case*, 277 Mass. 581, 584-585 (1931). Other cases in which the employer's conduct was held insufficient to support doubled penalties under § 28 are analogous to this one, or involve conduct that was arguably worse. For example, the failure, again in violation of regulations, to have installed a safety guard on a carding machine, *Sciola's Case*, 236 Mass. 407, 414 (1920), and the employer's refusal of a suggestion to use "tested," rather than ordinary, chains on the dryer roll of a paper making machine, *Scaia's Case*, 320 Mass. at 433-435, were each deemed insuf-ficient under § 28. In the latter decision, the court's language is equally descriptive of the record in this case: "[T]here was evidence that [the employer] could have been more careful and that he took some risk in using the ordinary chain, but we fail to find evidence that the risk he took was both so obvious and so great as to render his conduct 'serious and wilful,' that is, practi-cally speaking, wanton and reckless, within the established con-struction of section 28." *Id.* at 435.

The employer's precautions were inadequate and the enforce-ment of those precautions was, in the event, ineffective. This

---

[9]Indeed the requirement is so prevalent that it has been applied against injured employees as well, to bar recovery when the employee, rather than the employer, was at fault. See, e.g., *Silver's Case*, 260 Mass. 222 (1927).

conduct can certainly be characterized as negligence or gross negligence. But our cases do not support a determination that the employer acted with wanton and reckless disregard for the consequences or engaged in behavior that was quasi criminal in nature. The reviewing board's decision was arbitrary and capricious in the sense of not having adequate evidentiary and factual support. See *Moss's Case*, 451 Mass. at 712.

> *Decision of the reviewing board*
> *reversed.*